Ringquist v. Young.

---

RINGQUIST, *Appellant*, v. YOUNG.

**Division One, October 31, 1892.**

1. **Will: CONSTRUCTION.** The intention of a testator must be learned from the language he uses in the will giving it its usual and ordinary acceptation.

2. ——: ——: REMAINDER. Where a testator devised certain lands to his wife for life with remainder to one of his sons, providing in his will that if any of his children, to whom he had made devises, should "die without a lawful heir or heirs, the property I give them shall return to the then living children forever," on the death of the widow and the remainderman without issue the land vested in the testator's children then living, and a child of another deceased son of the testator who died prior to the death of said remainderman took no interest in it.

*Appeal from Ray Circuit Court.*—HON. JAS. M. SANDUSKY, Judge.

AFFIRMED.

Ringquist v. Young.

*J. L. Farris* for appellant.

It is a well-established principle of law that in construing wills the intention of the testator must always control, unless the same should be in violation of some established rule of law. For the purpose of carrying out the intention of the testator the rule goes so far as to authorize courts to disregard the strict grammatical construction of words and to effect and carry out his intentions. "Words and limitations may be transposed, supplied or rejected." 1 Redfield on Wills, 463; *Pond v. Bergh*, 10 Paige, 140. The provision in the will is, "the property I give them shall return to the then living children forever." In order to carry out the intention of the testator it must be extended to mean grandchildren, as well as immediate offspring. Any other construction as to the intention of the testator converts his will into a mere "wheel of fortune," instead of being an intelligent instrument drawn for the purpose of accomplishing just ends. The construction given by the court below causes the testator to be more provident and generous to his grandchildren "whose parents are living," than toward those whose "parents are dead." Such a construction is monstrous. The following authorities are given in support of the foregoing suggestion: 41 Hun, 497; 29 Hun, 412; 4 Hun, 130; *Prowett v. Rudman*, 37 N. Y. 42; *Scate v. Guernsey*, 48 N. Y. 106; *Lawrence v. Hibbard*, 1 Bradf. 252; *Caul v. Brown*, 4 Sandf. 123; 29 Am. Dec. 266.

*Lavelock & Lavelock* and *Deatherage & Young* for respondent.

(1) A devise to a child in fee, but, in the event of his death without issue, the estate bequeathed to vest absolutely in the children of the testator then

living, creates a conditional fee in the first taker with a limitation over on the happening of the contingency mentioned, which is good as an executory devise. 1 Redfield on Wills, sec. 277; 2 Jarman on Wills, pp. 483-5; Beach on Wills, sec. 208, and cases cited; 4 Kent's Commentaries, sec. 264; Tiedeman on Real Property, secs. 530-7; *Barney v. Arnold*, 1 N. E. Rep. 138; *Randall v. Josselyn*, 10 Atl. Rep. 577; *O'Brien v. O'Leary*, 10 Atl. Rep. 697; *Chew v. Keller*, 100 Mo. 368-9. (2) The word "heirs" has a well-defined technical meaning, but it will be construed to mean children, when it clearly appears from the context that the testator employed it in that sense. Beach on Wills, sec. 287; *Antony v. Antony*, 55 Conn. 256; *Bland v. Bland*, 103 Ill. 12; *Haverstick's Appeal*, 103 Pa. St. 394. (3) A devise to one's children only includes the immediate offspring of the testator, provided there are children, and will not embrace grandchildren. 2 Jarman on Wills, p. 690; Schouler on Wills, sec. 533; Beach on Wills, sec. 279; *Palmer v. Horn*, 84 N. Y. 516; *Pugh v. Pugh*, 105 Ind. 552; *Presley v. Davis*, 62 Am. Dec. 396. (4) The death of the first taker is a condition precedent to such executory devise ever becoming operative, and the ascertainment of those constituting the class must of necessity be postponed until the happening of the contingency—the death of the first taker without children. And, in this case, nobody but the children of the testator living at the death of Benjamin F. Young, are beneficiaries of the estate limited by such executory devise. *Thompson v. Garwood*, 31 Am. Dec. 502; *Hall v. Smith*, 61 N. H. 144; *O'Brien v. O'Leary*, 10 Atl. Rep. 697; *Campbell v. Clark*, 10 Atl. Rep. 702; *Wood v. Ballard*, 25 N. E. Rep. 67; *Spofford v. Pearsall*, 56 Hun, 148; *Webb v. Carpenter*, 12 Atl. Rep. 129. (5) If by one clause of a will an estate absolute is devised, and by a subsequent clause

the same is cut down·to a conditional fee, the latter will prevail. 2 Jarman on Wills, p. 44; Schouler on Wills, sec. 476. (6) The intention of the testator is to be gathered not from single words, sentences or paragraphs, but the entire instrument—its general scope and design—will be considered in the light of the circumstances surrounding the testator at the time of its execution, and every provision rendered effectual if possible. Beach on Wills, secs. 311–13; Schouler on Wills, sec. 468; *Carter v. Alexander*, 71 Mo. 589; *Russell v. Eubanks*, 84 Mo.' 86, 87; *Noe v. Kern*, 93 Mo. 367; *Munroe v. Collins*, 95 Mo. 41; *Bland v. Bland*, 103 Ill. 12.

BRACE, J. — This is an action in· ejectment by which the plaintiff, husband of a granddaughter of John T. Young, deceased, seeks to recover possession of an undivided one-fifth of certain real estate, described in the petition, of which the said Young died seized, and to which plaintiff claims his wife is entitled, under the provisions of the last will and testament of said deceased. The case was tried by the court without a jury on the will and an agreed statement of facts. The finding and judgment were for the defendant, and the plaintiff appeals.

John T. Young died on the seventh of August, 1856, possessed of a large estate consisting of lands, negroes and personal property, all of which he disposed of by his will, executed by him on the eighteenth of May, 1854. He left surviving him his wife, Louisa, and· six children, Sebron S., Ambrose, Eliza J., Thomas R., Warren and Benjamin F., who were the beneficiaries of his will.

The will is too voluminous to be set out in full; it made provision for his widow, the guardianship of his minor children, the settlement of his estate and the

distribution of his personal estate among his children, taking into consideration advancements made to them in his lifetime, and gave to each of his children a tract of land.

For the purposes of this case, it will be sufficient to set out the language of the will making devises of the real estate, which is as follows:

"I give and devise to my oldest son, Sebron Sund Young, the west half of the northwest quarter of section 22, township 53, range 27, containing eighty acres; also the east half of the northeast quarter, section 21, township 53, range 27, containing eighty acres more or less, to have and to hold to my son, Sebron S. Young, his heirs and assigns forever with its contents. I give and devise to my second son, Ambrose Young, the northeast quarter of section 28, township 53, range 27; also twenty acres of the northwest forty of the southwest quarter of section 22, township 53, range 27, all containing one hundred and eighty acres, with all its appurtenances more or less, to have and to hold to my son, Ambrose Young, his heirs and assigns forever. I give and devise to my third son, Thomas Reynolds Young, the west half of the northeast quarter, section 21, township 53, range 27, eighty acres; the east half of the northwest quarter, section 21, township 53, range 27, eighty acres; also the southwest quarter of the northwest quarter of section 21, township 53, range 27, forty acres more or less, to have and to hold to my son, Thomas R. Young, his heirs and assigns forever—all its contents. I give and devise to my fourth son, Warren Young, the east half of the southeast quarter, section 21, township 53, range 27, eighty acres, and the west half of the southeast quarter of section 21, township 53, range 27; also twenty acres of the northwest quarter of southwest quarter of section 22, range 27, all contain-

ing one hundred and eighty acres with the appurtenances to have and to hold to my son, Warren Young, his heirs and assigns forever— all the above-named lands situate and lying and being in the county of Ray and state of Missouri. *Lastly, I give and devise unto my said wife, Louisa Young, and my youngest son, Benjamin Franklin Young, the east half of the southwest quarter, section 21, township 53, range 27, containing eighty acres, and west half of the southwest quarter, section 21, township 53, range 27; also the east half of the southeast quarter of section 20, and the southeast quarter of the northeast quarter of section 20, township 53, range 27, containing forty acres*; all my said messuages or tenements, with the appurtenances, situate and being in the county of Ray and state of Missouri thereto belonging, and the rents, issues and profits thereof *for and during the term of her natural life, and from and after the decease of my wife, Louisa, I give and bequeath the said messuages or tenements, lands and hereditaments unto my said son, Benjamin Franklin Young, and unto his heirs and assigns forever.* * * *
Lastly, I give and devise unto my daughter, Eliza Jane Young, late Eliza Jane Keel, the northwest quarter, section 27, township 53, range 27, containing one hundred and sixty acres of land, more or less, to have and to hold to my said daughter, Eliza Jane Keel, and her lawful heirs, for and during her or their natural lives, without impeachment of waste, also $420 with what I gave her heretofore to be made equal with my oldest son, Sebron S. Young, and equal share of the balance of my estate, not herein named or willed, I also, for the keeping and not spending or wasting the above-named property or money, appoint my worthy friend, Sebron S. Young, if he will, trustee of Eliza Keel's legacy to rent and loan out at interest the land and all money that should come to the share of said Eliza Keel and

supply her necessary wants, etc. If the said Eliza shall die without a lawful heir the property, moneys and all that I have heretofore given her or give her hereafter shall return to my living children and heirs forever, *and also, should any of all my children die without a lawful heir or heirs, the property I give them shall return to the then living children forever*, and finally all the rest, residue and remainder of all my estate and effects, real and personal, whatsoever and wheresoever not hereinbefore otherwise disposed (after payment of my debts, legacies and funeral expenses and other charges and deductions as aforesaid) I do give, devise and bequeath to my children share and share alike."

The real estate in question is that devised to Louisa Young for life, remainder to Benjamin Franklin Young, *in italics;* the immediate provision of the will upon which the question to be decided turns is also *italicized.*

The plaintiff's wife, Florence I. Ringquist, is the daughter and only child of the testator's son, Thomas R. Young, who died April 7, 1856. The defendant is the widow of Warren Young, who died May 26, 1886, leaving several children, and is in possession claiming under him and the other children of said testator. Benjamin F. Young, to whom the land was devised, after the death of the widow, Louisa, died on the twenty-first day of September, 1861, unmarried, leaving no children; the widow of the testator, Louisa, died on the twenty-fifth of October, 1889; and this suit was instituted on the second of January, 1890.

The contention of the plaintiff is that, upon the death of the said Benjamin F., his interest in the land under the devise became vested in the then living children *and grandchildren* of the testator, subject to the life-estate of the widow, and that plaintiff's wife as the

then only living child of the testator's said son, Thomas
R. Young (the life-estate having become extinct), is
entitled to the undivided fifth part thereof as a tenant
in common in fee simple, because *such was the intention
of the testator*.   To ascertain that intention we have
nothing before us but the will itself, and if from the
whole of it such an intention can be satisfactorily
deduced, the plaintiff ought to prevail; if not, the judg-
ment of the trial court should be sustained.   Our abil-
ity to comprehend that intention will not be assisted by
defining distinctly the estate acquired by Benjamin F.
Young, under the provisions of the will, in this land of
his father's, or by giving it a name.   We have to do
(so far as we are advised by the face of it) simply
with the will of a layman, whose intention is to be
learned by the language he uses, in its usual and ordi-
nary acceptation, and, in this task, authorities also can
be of little assistance.

   After careful and repeated readings of this will, we
confess our inability to arrive at the conclusion that
such was his intention.   Tracing, as well as may be,
the operations of his mind, as it proceeded through it,
from the first to the last word written, we find every-
where stamped upon it the predominating idea of a pro-
vision for his *living children*.   He seems to have loved
his boys all alike and endeavored to provide for them
all alike out of his estate.   The disposition of his real
estate naturally occurred to him as the first thing to be
done, and as his boys presented themselves to his mind,
in the order of their seniority, he proceeds at once to
devise to each of them a tract of land in fee simple
absolute; the devise to his youngest son, Benjamin,
being a tract somewhat larger than the others, and he
being an infant is by the testator committed to the
guardianship of his mother, to whom is given a life-
estate in the land devised to him; and his two older

brothers, Thomas and Warren, being also minors, are committed to the guardianship of their mother, as is also the management of their said lands for their education and support until they arrive at the age of twenty-one years or marry; and, in case of her death or marriage before the marriage or majority of her said minor sons, the management of the estate devised to them was devolved on his executor for the same purposes.

His mind then passes to the consideration of his large personal estate, which he distributes with much care to his children, and then recurs to his only daughter and the tract of land reserved for her. She seems to have been once married, and now, for the first time, the testator's mind seems to look beyond his living children to their issue; and he devises that tract to "Eliza Jane Keel and her lawful heirs for and during her or their natural lives," and, "if the said Eliza shall die without a lawful heir, the property * * * shall return to *my then living children and heirs forever.*"

It is evident and conceded that, in using the terms "lawful heirs"—"and lawful heir"—in this devise, the testator meant "children" or "issue;" on failure of which or their death and the death of Mrs. Keel, he expressly and unmistakably provides that the land devised to them for life only "shall return" to his "then living children and heirs forever." By a natural correlation of ideas, the necessity of making a provision for the disposition of the remainder after the termination of the life-estate in this devise, suggested the possibility of the death of some of his boys without issue, for which contingency he then proceeds to provide by saying: "*Should any of all my children die without a lawful heir or heirs, the property I give them shall return to the then living children forever,*" thus reducing the absolute estate in fee simple which he had previously

given them to a base or conditional fee. But, because this was the legal effect of this provision, it does not follow that thereby was disclosed any intention upon the part of the testator that the estate which should pass upon the happening of the contingency should go to any of his descendants other than to his *then living children*, and to them forever, that is, in fee absolute. The whole force of the argument in support of plaintiff's contention rests upon the assumption that the purpose of the testator was to keep his estate within the line of his blood *in the proportion in which he devised it.* Therefore, when he said to my then "living children forever," he must have intended to include the issue then living of such of his children as might theretofore have died.

As before said we fail to discover such a purpose; on the contrary, if what is evident on the face of the will be kept in mind, that when the testator uses the word "lawful heir" he means "child" or "issue," and when he uses "heir and assigns forever" or "children forever," he means exactly what he says and what the words legally import. The contention has no support whatever. We have no power to write "grandchild" into this will from our own sense of justice or propriety when the testator has not done so, and when we cannot discover it was his intention that it should be so read.

The judgment of the circuit court is, therefore, affirmed. All concur.