MARIE WORRALL DWYER, SPENCER WORRALL,
CARRIE WORRALL DAUGHERTY, JOSEPHINE
WORRALL O'CONNELL, JOHN WORRALL and
CORNELIA M. WORRALL, Appellants, v. ST.
LOUIS UNION TRUST CO., a Corporation.

Division One, March 5, 1921.

1. **ACTIVE TRUSTS: Life Tenant: Contingent Remaindermen: Ter-
mination.** Where the legal title to property is vested by will in a
trustee of an active trust for the benefit of a named person for
life and after her death for the benefit of her children "living at
the time of her death," such trust will not be terminated by a
court of equity at the suit of such life tenant and all her living
children, even though the evidence shows she is past the age of
child-bearing, inasmuch as such children are mere contingent re-
maindermen and may never have a vested interest in the estate.

2. ———: ———: ———: ———: **Testator's Expressed Intention.**
The testator had some valid reason for creating this active trust.
His desires are clearly expressed in his will which created the
trust, and such desires should be executed accordingly and equity
will not interfere with the execution of them.

Appeal from St. Louis City Circuit Court.—*Hon. Charles
B. Davis,* Judge.

AFFIRMED.

*Arthur J. Freund* and *Louis B. Sawyer* for appel-
lants.

(1) Regardless of the nominal duration of an
estate given to a trustee, it continues in equity no long-

286 Mo.—31

er than the thing sought to be secured by the trust demands, and when that demand has been fully satisfied, and although the trust may not have ceased by expiration of time, yet if all the parties who are or who may be interested in the trust property are in existence and are *sui juris,* and if they agree thereto, a court of equity will decree the termination of the trust. 39 Cyc. 99; Beach on Trusts, secs. 705, 761; 2 Am. Law Rep. 579; 2 Perry on Trusts (6 Ed.), pp. 1497, 1499; Peugnet v. Berthold, 183 Mo. 61; Smith v. Smith, 70 Mo. App. 453; Rector v. Dalby, 98 Mo. App. 196; Newton v. Rebenbach, 90 Mo. App. 657; In re Stafford's Estate, 258 Pa. St. 595; Inches v. Hill, 106 Mass. 575; Smith v. Harrington, 4 Allen (Mass.) 566; Simmons v. Trust Co., 136 Minn. 357, 162 N. W. 450, L. R. A. 1917 F, 736. (a) A court of equity may require a trustee to convey to the *cestuis que trustent* property which is without the territorial jurisdiction of the court and of which a decree would not divest it. Donaldson v. Allen, 182 Mo. 626. (2) Where a woman is past the child-bearing age, and where a trust estate is to be divided and paid over to her children living at her death, and where the mother and all of the children, being *sui juris,* join in a petition to have the trust terminated, they shall be entitled to a decree for the termination of the trust estate. Johnson v. Beauchamp, 5 Dana, 70; Appeal of Gowen, Trustee, 106 Pa. St. 288; Male v. Williams, 48 N. J. Eq. 33; Reynolds v. Reynolds, 1 Dick (Ch. 1764) 374; Ex parte Catherine Brown, 7 Ir. Eq. 484; Browne v. Pringle, 4 Hare, 124, 14 L. J. Ch. (N. S.) 121, 8 Jur. 1113; Leng v. Hodges, Jac. (Ct. Ch.) 585; Dodd v. Wake, 5 De G. 226, 21 L. J. Ch. (N. S.) 456, 16 Jur. 776; In re Dawson, 39 Ch. Div. 155; White v. Edmond, 1 Ch. Law Rep. 570. (3) The common law of England governs in this case. Laws 1917, p. 324, sec. 8047; Lindell v. McNair, 4 Mo. 380; Brandon v. Carter, 119 Mo. 572; State v. Rader, 262 Mo. 129.

*Bryan, Williams & Cave* for respondent.

(1) The estate in remainder, created by the will of Peter Conrad, and given to the children of Cornelia Worrall "living at the time of her death," is not vested, but only contingent. DeLassus v. Gatewood, 71 Mo. 371; Dickerson v. Dickerson, 211 Mo. 483; Emerson v. Whillesam, 55 Mo. 258; Collins v. Crawford, 103 S. W. 537; McFarland v. Bishop, 222 S. W. 143. All of her children may predecease Cornelia Worrall, in which event the remainder, after the life estate of Cornelia Worrall, will go to the heirs at law of the testator, Peter Conrad, and none of the parties hereto will ever have a vested interest in the trust estate. All of the parties interested in the trust are not, therefore, parties to this suit. (2) This trust is an active one. And, while it may be that a court will terminate a dry trust where the purpose of the trust has been fully accomplished and all of the parties interested in the trust are *sui juris* and agree thereto, no court will so terminate (a) a trust whose purpose has not been fully accomplished or (b) a trust where all of the parties having a possible interest do not agree. Shelton v. King, 229 U. S. 90; Smith v. Smith, 70 Mo. App. 448; Upham v. Plankington, 152 Wis. 275, 283; Claflin v. Claflin, 149 Mass. 19. (3) This will, providing that the trustee shall pay all "income to my daughter, Cornelia, for the maintenance and support of herself and family," clearly discloses an intent on the part of the testator to limit the use, and the right to the use, of such income, to the specific purpose of maintaining and supporting Cornelia Worrall during her life, and, such being the case, the law will imply a restraint against the right of alienation and anticipation of the income by Cornelia Worrall. Higbee v. Brockenbrough, 191 S. W. 994; Maxwell v. Growney, 213 S. W. 427; Gibson v. Gibson, 219 S. W. 563. (4) A trust, as here, to hold property during the life

of a woman and to distribute it among her children at her death, cannot be terminated, at the instance of herself and her living children, merely because she has reached an age after which women do not usually bear children and has infirmities which, in the opinion of physicians, will prevent her from having other children. This, for the reason that the court, in such a suit, will always presume a possibility of further children. Thomas v. Thomas, 149 Mo. 435-6; Rozier v. Graham, 146 Mo. 352; Ennis v. Eager, 152 Mo. App. 497; Elizabeth May v. Trust Co., 48 L. R. A. (N. S.) 865; Ricards v. Safe D. & T. Co., 63 L. R. A. 145; Bearden v. White, 42 S. W. (Tenn.) 476; Fletcher v. Trust Co., 187 Pac. 425; In re Dougan, 139 Ga. 351, 48 L. R. A. (N. S.) 868; Bigley v. Watson, 38 L. R. A. 679; Garner v. Dowling, 58 Tenn. (Heisk.) 49; Quigley's Trustee v. Quigley, 161 Ky. 85; Reeves v. Simpson, 182 S. W. 68; Bowlin v. Hospital Co., 31 R. I. 289; Allen v. Allen's Trustee, 133 S. W. (Ky.) 543; Bailey's Trustee v. Bailey, 97 S. W. (Ky.) 810; Towle v. Delano, 144 Mass. 95; Flora v. Anderson, 67 Fed. 182; List v. Rodney, 83 Pa. St. 483; Lawson on Presumptive Evidence, sec. 364; Wigmore on Evidence, 2523.

GRAVES, J.—By his will, Peter Conrad, created a trust in favor of his daughter, Cornelia M. Worrall. Conrad had but two children, a son and a daughter. At least this seems to be the fact from the face of the will he made. One-half of his property he devised to his son, and the other half was placed in trust to the daughter, Mrs. Worrall. That portion of the will, here involved, reads:

*Statement.*

"The other one part so partitioned and divided and one-half of all other property, goods and moneys, I do give and bequeath to the St. Louis Trust Company of St. Louis, Mo., *In Trust, However, For The Under-Mentioned Purpose,* to-wit:

"To pay over all income, earnings and profits aris-
ing from such one-half of my property so bequeathed to
my daughter Cornelia, *For The Maintenance And Sup-
port Of Herself And Her Family;* and after her death
the said property, and the undisposed of earnings and in-
crease thereof to be divided equally, share and share
alike, among the children of my said daughter Cornelia,
*Living At The Time Of Her Death* if the youngest of
her said children has reached the age of 21 years, but
if the youngest of said children has not reached that
age, then this trust shall continue *In Favor Of And For
The Support Maintenance And Education Or Advance-
ment In Life Until The Youngest Of Said Children Be-
comes Of That Age, Then To Be Divided Equally Be-
tween Those Living At That Date,* male and female,
share and share alike."

Conrad died in 1900, and the St. Louis Trust Co.
began the administration of the trust. In 1902 the St.
Louis Trust Company changed its name to the St. Louis
Union Trust Company, and by that name the trustee has
continued its duties to this date. The present suit is one
to determine that trust, and the plaintiffs are Mrs.
Worrall, and her five children, and the defendant, the
present trustee of the estate. Mrs. Worrall had but five
children, and they are all adults, and living and to them
she had conveyed (or attempted to convey) all her in-
terest in the trust property. These conveyances are in
this record. The trust property consists of some land
in Ste. Genevieve County, Missouri, some land in Mc-
Cracken County, Kentucky, and some $8,500 in personal
securities and cash, in the hands of defendant, as trustee.

In behalf of plaintiff it was shown that Mrs. Worrall
was 56 years old, and had long since reached and passed
that period in a woman's life, commonly called the
"change of life." By a physician it was shown that she
could bear no more children, for this and other physical
reasons. No evidence was introduced by defendant, and
upon those facts, the court entered a judgment or de-

cree in favor of defendant, from which plaintiffs prose-
cuted this appeal. The case is largely one of law, al-
though it might be added that there is no evidence show-
ing the procreative organs of Mrs. Worrall to be dis-
eased, or injured, save and except by the flux of time on
the life of a woman as above detailed.

I.  In this case there is urged the interesting ques-
tion, as to whether or not, from a legal standpoint,
Mrs. Worrall has passed the child bearing age, and much
legal lore has been called to our attention.
Possibility of   With this question we shall not deal, be-
Issue Extinct.   cause, in our judgment, the case is, and can
be, fully determined upon questions which precede this
in the orderly disposition of vital questions. In Black-
stone's Commentaries, it has been said: "A possibility
of issue is always supposed to exist in law, unless ex-
tinguished by the death of the parties, even though the
donees be, each of them, a hundred years old." [2 Black-
stone's Commentaries, 125.] The later court views upon
this question we shall not review. Other matters settle
the case, and a review of this question would be a waste
of energy.

II.  The status of Mrs. Worrall's children under
the will of Conrad is one of the material questions. A
reading of the will shows that the legal title to the prop-
erty passed to the St. Louis Trust Company, now the
St. Louis Union Trust Company. This title was im-
pressed with a trust "to pay over all income, earnings
and profits to my daughter Cornelia, for
Active Trust:       the maintenance and support of herself
Termination by
Decree of Court.    and family." When this trust was fully
executed, by the death of Mrs. Worrall,
and the other provisions therein expressed, the *cor-
pus* of the estate was to go to the children of Mrs. Wor-
rall, (living at the time of her death) or when the young-
est reached the age of 21 years. The qualifying terms
"living at the time of her death" makes the children

of Mrs. Worrall merely contingent remaindermen under the will of the grandfather. Their estate was dependent upon the contingency of their survival of the mother. They were, under the rulings of this court contingent remaindermen, and no more. [DeLassus v. Gatewood, 71 Mo. 371; Dickerson v. Dickerson, 211 Mo. 483.]

It has been said that remainders are the outgrowth of wills or contracts, and reversioners come from the operations of law. In this case the interest given to the children of Mrs. Worrall might never materialize. Whilst they are all living now, all might predecease the mother, and then there would be reversioners by operation of law. In other words the beneficial interest in the trust property would go to the lawful heirs of Peter Conrad, and the trustee of this trust would have to account to these reversioners for the *corpus* of this estate. This is important in view of the fact, that, in equity, attempt is being made to terminate this active trust, in the interest of parties who might never have the slightest interest in the trust estate. Their present interest is purely contingent, and the contingency may not happen; i. e. they may not be living at the death of Mrs. Worrall.

By the brief we are cited to 39 Cyc. p. 99, where the following general rule is thus stated:

"By virtue of its supervisory jurisdiction over trusts and trustees, a court of equity has power, in a proper case, to terminate an express trust, in whole or in part, even before the expiration of the term for which it was created, although, in such case, exceptional circumstances must exist. The court will exercise this power and decree a termination when all the objects and purposes of the trust have been accomplished, the *cestuis que trustent* are all *sui juris,* and application is made by all of them. On the other hand, the court will not decree a termination when some of the *cestuis que trustent* do not consent, or where the trust is still an active, con-

tinuing one, with some of its purposes unaccomplished and not shown to be impossible of accomplishment.''

We have no fault to find with this general rule. There are cases in which courts have terminated trusts in advance of the time fixed in the trust instrument. The courts have done so with discrimination, and caution, but if the cases cited to support the general pronouncement be examined, it will be found that the facts do not fit the case at bar.

Suppose in the instant case under the facts alleged, a decree should be entered terminating the trust, and this property be turned over to the five present children of Mrs. Worrall where would the trustee stand at the death of Mrs. Worrall; if all of her children had predeceased hers. The proof shows that there are several grandchildren, and these, as the reversioners might make claim for the estate. There is no vested estate in their parents, and if their parents all predecease the grandmother, they take from the grandfather. This contingency alone is sufficient to justify the judgment *nisi*. They are not parties to the instant suit, and have not consented in anyway to a divesting of their reversionary interests.

III. But there is another reason equally as good. Peter Conrad had some valid reason for creating this active trust in the interest of his daughter. It appears that she had passed through the long-to-be-remembered St. Louis cyclone. Her nervous shock, occasioned thereby, seems to have lingered with her. Conrad may have had this in view. He might have **Active Trust:** had in view the habits and make-up **Testator's Intentions.** of her then husband, or may have looked with doubt to a future husband. Just what may have been the compelling force which resulted in this trust in favor of his daughter, we need not further speculate. He may have doubted her ability to withstand the appeals of her children for property, and he may have thought, that, in old age, she would not be as well cared

for as she would be by the active trust, which he was creating in her favor. For us, it should suffice to say that Peter Conrad's desires have been clearly expressed in the will, and the trust thereby created. He preferred that a trustee of his own naming should husband his property, and see that his daughter got the profits thereof, from the hands of that trustee, to the day of her death. The desire of the old man as expressed in his will should be executed, and equity will not interfere with the carrying out of his plain desire. This is an active, live trust, and has not been fully accomplished, and will not be, until the trustee has garnered the profits of the estate to the death of the daughter, and paid them out, as per the directions of the will. Upon either of the two theories, the trial court was right, and its judgment is affirmed. All concur.