W. SCOTT BATES and UNION NATIONAL BANK in Kansas City, as Successor Trustee Under the Will of LEE CLARK, v. CAROLYNE M. BATES, W. SCOTT BATES and GEORGE E. BATES, Defendants, GEORGE E. BATES, Appellant, CAROLYNE M. BATES, Respondent. —124 S. W. (2d) 1117.

Division One, February 8, 1939.

1014

*H. L. McCune, Blatchford Downing* and *McCune, Caldwell & Downing* for appellant.

*Rees Turpin* and *Turpin, Behrendt & Searing* for respondent.

BRADLEY, C.—Rehearing was granted in this cause and it was reargued. The action is to construe the will of Lee Clark, deceased.

Plaintiffs are the successor trustees under the will, and the controversy is between defendants, George E. Bates, grandnephew of the testator, and Carolyne M. Bates, widow of Albert B. Bates, nephew of testator. The trial court rendered a decree construing the will as contended for by Carolyne M. Bates and George E. appealed.

The will was executed December 7, 1916. Testator died April 16, 1917, and the will was duly probated in the probate court of Jackson County, at Kansas City. The entire estate was appraised at $1,088,-046.11.

Testator died childless at the age of sixty-seven. He left surviving him, his widow, Helen E. Clark, and three brothers, W. J., Edgar W., and R. Bruce Clark; and two sisters, Florence E. Bates and Ella C. Loose. Florence E. had two sons, Albert B. and W. Scott Bates. Florence E. Bates died August 6, 1922, and left surviving her two sons, Albert B. and W. Scott Bates. Testator's widow, Helen E. Clark, died July 18, 1934. Albert B. Bates, son of Florence E., married June 1, 1904, and died January 29, 1932, and by his will, after some nominal bequests, bequeathed to his wife, defendant, Carolyne M. Bates, the residue of his estate, which residue included whatever interest, if any, he had in the estate of his uncle, Lee Clark, testator.

The Clark will consisted of several clauses. The first clause directed the payment of debts. The second clause is as follows: "Second: I give and bequeath unto the trustees hereinafter named, to be paid before any other distribution of my estate shall be made, the sum of three hundred thousand dollars ($300,000) to be held by them in trust, to manage, invest and reinvest, for the benefit of my beloved wife, Helen E. Clark, during her natural life, the income from said sum of $300,000.00 to be paid to my said wife either in monthly or semiannual payments as she may request. If for any reason the said $300,000.00 fail to produce an income of $15,000.00 each year, then my said trustees, if my wife shall so request, are authorized and directed to pay to my wife out of said principal sum of $300,000.00 such an amount as, added to the income, will make $15,000.00 for her use each year, as long as she may live. At the death of my wife said $300,000.00 or such sum as is remaining, shall be, by my trustee, given to and divided among such of the parties named in paragraph (8) *as may then be living and the children, if any, of such as may not then be living,* in the proportion named in said paragraph eight (8)." (Italics ours.)

The third clause devised to the wife, Helen E. Clark, all real estate and furniture; the fourth bequeathed $75,000 to Edgar J. Clark (son of Edgar W.); the fifth gave $40,000 to the trustees, the income from which was to be paid to the nephew, Albert B. Bates, "as long as he may live," and if he should die before testator, then such sum was to remain a part of the estate. The trust provision as to

the $40,000 could be terminated, and after the death of testator it was terminated and the $40,000 was paid to Albert B. Bates. By the sixth clause, testator bequeathed to his brother, W. J. Clark of Warrensburg, Missouri, "anything he may be owing me, and also my stock in the Clark Lumber Company of Warrensburg, Missouri." The seventh clause recites that testator's sister, Ella C. Loose, "was amply provided for," but bequeathed to her $100 to "purchase something in remembrance of" the testator.

The eighth clause follows: "Eighth: The residue of my estate I give and bequeath to the following, to be divided among such of the parties as may then be living and the children, if any, of such as may not then be living, in the following proportions, to wit:

"To Edgar W. Clark, brother, four-elevenths (4/11);

"To W. J. Clark, brother, two-elevenths (2/11);

"To my trustees for the benefit of Florence E. Bates, sister, as hereinafter set forth, three-elevenths (3/11); ·

"To my trustees for the benefit of R. Bruce Clark, brother, as hereinafter set forth, two-elevenths (2/11);

"I request my brother, Edgar W. Clark, to see that his three children receive such proportion of the four-elevenths (4/11) given him as his judgment dictates.

"I request my brother, W. J. Clark, to see that his daughter, Leta, receive such portion of the two-elevenths (2/11) as his judgment dictates.

"The three-elevenths (3/11) left to my trustees for the benefit of my sister, Florence E. Bates, shall be by them invested and reinvested, ·the income from same to be paid said Florence E. Bates, during her lifetime, and at her death, the said 3/11 to be equally divided between her sons, W. Scott Bates, Albert B. Bates and her grandson, George E. Bates, son of said W. Scott Bates. In case of the death of any of the above, then to ·the survivor of them.

"The two-elevenths (2/11) left to my trustees for the benefit of R. Bruce Clark, shall be by them invested and reinvested, the income from same to be paid to R. Bruce Clark, or his wife, Celia L. Clark, to be by them used for the education and support of their son, Daniel T. Clark. In case of the death of either, then to the survivor and in the case of the death of both R. Bruce Clark and Celia L. Clark, then the trustees shall see that said Daniel T. Clark is cared for and educated out of the income of said 2/11, in case of the death of said Daniel T. Clark, before his parents should die, then the trustees shall pay the income of said two-elevenths to R. Bruce Clark and Celia L. Clark in equal parts for their support as long as they, or either of them shall live. After Daniel T. Clark is educated, then the income from said two-elevenths shall be paid to R. Bruce Clark and Celia L. Clark, in equal parts, during their lifetime and to the

survivor of either of them. After the death of both and if said Daniel T. Clark shall have reached the age of twenty-five years, the principal of this trust fund shall be by the trustees, paid over to said Daniel T. Clark, and this trust terminated.'' (Italics ours.)

One-half of the three-elevenths of the $300,000 trust fund is the *amount in dispute,* and it appears that the three-elevenths interest is of a value in excess of $30,000. We mention this to show our jurisdiction.

George E. Bates, appellant, contends: (1) That upon the death of the testator the legal title to the three-elevenths of the trust fund of $300,000 vested in the trustees to be held by them for the benefit of Helen E. Clark during her life, and that at her death, if Florence E. Bates should then be living, the trustees would continue to hold said three-elevenths, or whatever part thereof remained, for the benefit of Florence E. Bates during her life, and at her death, whatever part of the three-elevenths interest remained would go to Albert B. Bates, W. Scott Bates and George E. Bates, share and share alike, or to the survivor or survivors of them; (2) that since both Florence E. Bates and Albert B. Bates died *prior* to the death (July 18, 1934) of Helen E. Clark, the three-elevenths interest in the trust fund, or what remained, upon the death of Helen E. Clark, became the absolute property of himself and his father, W. Scott Bates, they being then the survivors of W. Scott Bates, Albert B. Bates and George E. Bates.

Carolyne M. Bates, respondent, contends: (1) That upon the *death* of the testator the remainder interest in the three-elevenths of the trust fund *vested* in Florence E. Bates, but that the *possession* and *enjoyment* thereof were postponed during the life of Helen E. Clark; (2) that upon the death of Florence E. Bates (August 6, 1922), said remainder interest passed by descent, as well as by her will, to her sons, W. Scott Bates and Albert B. Bates, but the *possession* and *enjoyment* thereof were postponed during the life of Helen E. Clark; (3) that upon the death of Albert B. Bates (January 29, 1932) one-half of said remainder interest passed by his will to his wife, Carolyne M. Bates, appellant, but the *possession* and *enjoyment* thereof were postponed during the life of Helen E. Clark; and (4) that upon the death of Helen E. Clark (July 18, 1934), W. Scott Bates and Carolyne M. Bates, appellant, were entitled to said three-elevenths interest, or whatever part thereof remained, as their absolute property.

The primary rule for the construction of wills is to determine the "true intent and meaning of the testator," Section 567, Revised Statutes 1929 (Mo. Stat. Ann., sec. 567, p. 344), and this intention must control unless it contravenes some established rule of law. [St. Louis Union Trust Co. v. Hill, 336 Mo. 17, 76 S. W. (2d) 685; Trautz v. Lemp, 329 Mo. 580, 46 S. W. (2d) 135.] The section of the stat-

ute is merely a statutory declaration of the well settled rule that in construing a will courts must give effect to the intention of the testator as gathered from the entire will. [Doneghy et al. v. Robinson (Mo.), 210 S. W. 655.] When the provisions of a will are not entirely clear from the will itself, then certain auxiliary rules of construction may be invoked, and one of the rules, frequently invoked, is that the law favors vested estates. [Gardner v. Vanlandingham et al., 334 Mo. 1054, 69 S. W. (2d) 947, l. c. 950, and cases there cited.]

It is true that the rule that the law favors vested estates may be invoked when a proper situation exists, but after giving the present will extended consideration we do not think that there is any place for the application of such rule.

DeLassus v. Gatewood, 71 Mo. 371, was in ejectment, and involved the construction of the will of Ceran E. DeLassus, who died prior to May 5, 1857, and left surviving him, his wife and eleven children. The will devised to the wife for life or during widowhood all of testator's property, real and personal. At the death of the wife, or upon her remarriage, the property devised to her was to be "equally divided between my children that are alive or their bodily heirs, to-wit." Then follows the names of the eleven children. The widow never remarried, and died September 21, 1874. Felix, one of the eleven children married the plaintiff, Lydia DeLassus, October 7, 1872. There was born (June 7, 1873) of this marriage a son, William A. DeLassus. Felix died July 12, 1873, prior to the death of his mother, and left surviving his wife, Lydia, and his son, William. The son, William, died March 10, 1874, leaving his mother, the plaintiff Lydia. The plaintiff, Lydia, claimed that on the death of the testator, Felix, his son, and her husband, took a vested remainder in a one-eleventh interest in the estate, but that the possession and enjoyment thereof were postponed during the life of his mother or until she remarried; that upon the death of Felix this one-eleventh remainder interest passed by descent to his son, William; and that on the death of William, she, plaintiff, the mother of William, inherited the one-eleventh remainder interest from William, her son, and that, upon the death of the widow, she, Lydia, was entitled to the possession thereof.

It was held in the DeLassus case that the children between whom the property was to be equally divided, etc., had reference to the children living *at the death of the widow* and not those living *at the time of the death of the testator,* and that since Felix, son of testator, was not living, at the time of the death of the widow, no remainder interest ever *vested* in him, and consequently no interest passed, upon his death, to his son, William, and no interest passed from the son, William, to his mother, Lydia. In other words, it was held that whatever interest Felix took upon the death of the testator,

was contingent upon his surviving the widow or her remarriage, and that since neither of these contingencies accrued during his life, no interest ever *vested* in him.

Dickerson et al. v. Dickerson et al., 211 Mo. 483, 110 S. W. 700. was to set aside a deed made by George B. Dickerson to defendants, and involved the will of P. H. Dickerson, deceased. Plaintiffs and defendant were the only heirs at law of the grantor, George B. Dickerson, and the parties, including the grantor, were the children of P. H. Dickerson, testator, except as to one, who was a grandson of the testator. The will devised to testator's wife, Catherine, 200 acres of land, "to have and to hold the same to her for and during the term that she may remain my widow. If she marries or ceases to be my widow, the farm (the 200 acres) then reverts to my children, to be equally divided between them, and at her death said farm to be divided between my surviving children and grandchildren, if any, whose parents are dead." George B. Dickerson, grantor in the deed, died prior to the death of his mother, Catherine, who had not remarried. It was held that the interest of George B., grantor in the deed, was, under the will, contingent, and became extinct upon his death, and that his deed conveyed no interest, and the deed was set aside.

Dwyer et al. v. St. Louis Union Trust Co., 286 Mo. 481, 228 S. W. 1068, involved the will of Peter Conrad, who had a son and a daughter, Cornelia M. Worrall. One-half of testator's property was devised to the son and the other half to a trustee for the benefit of the daughter.

The trustee was "to pay over all income, earnings and profits arising from such one-half of my property so bequeathed to my daughter, Cornelia, for the maintenance and support of herself and her family; and after her death the said property, and the undisposed of earnings and increase thereof to be divided equally, share and share alike, among the children of my said daughter Cornelia, *living at the time of her death* if the youngest of her said children has reached the age of 21 years, but if the youngest of said children has not reached that age, then this trust shall continue in favor of and for the support, maintenance, and education, or advancement in life until the youngest of said children becomes of that age, then to be divided equally between those living at that date, male and female, share and share alike." (Italics ours.)

In ruling the Dwyer case, the court said: "A reading of the will shows that the legal title to the property passed to the St. Louis Trust Company, now the St. Louis Union Trust Company. This title was impressed with a trust 'to pay over all income, earnings and profits . . . to my daughter Cornelia, for the maintenance and support of herself and her family.' When this trust was fully executed by

the death of Mrs. Worrall and the other provisions therein expressed, the *corpus* of the estate was to go to the children of Mrs. Worrall (living at the time of her death), or when the youngest reached the age of 21 years. The qualifying terms 'living at the time of her death' makes the children of Mrs. Worrall merely contingent remaindermen under the will of the grandfather. Their estate was dependent upon the contingency of their survival of the mother. They were, under the rulings of this court, contingent remaindermen, and no more," citing the DeLassus and Dickerson cases, supra.

"If an estate is given by will to the survivors of a class, to take effect on the death of the testator, the word 'survivor' means those living at the death of the testator, but if a particular estate is given and the remainder is given to the survivors of a class, the word 'survivor' means those surviving at the termination of the particular estate." [Sullivan v. Garesche, 229 Mo. 496, 1. c. 506, 129 S. W. 949; Dickerson et al. v. Dickerson et al., 211 Mo. 483, 1. c. 494, 110 S. W. 700; DeLassus v. Gatewood, 71 Mo. 371, 1. c. 380; Dwyer et al. v. St. Louis Union Trust Co., 286 Mo. 481, 228 S. W. 1068, 1. c. 1069; Ringquist v. Young, 112 Mo. 25, 20 S. W. 159; Grenzebach v. Franke, Admr., 315 Mo. 392, 286 S. W. 79, 1. c. 81.]

The phrase *as may then be living* in the second clause of the present will, as we construe, has reference, as to time, to the death of Helen E. Clark, and not to the death of the testator. Viewing the will from its four corners, it is clear, we think, that the testator did not intend that Florence E. Bates should have any interest, greater than a life estate, in the three-elevenths of the trust fund, and her enjoyment of this interest was contingent upon her surviving Helen E. Clark, the first life tenant in the whole of the trust fund. As we read the applicable law the contingent interest of Florence E. Bates terminated upon her death. And had she survived Helen E. Clark, she would have had no descendible interest in the three-elevenths of the trust fund.

As we construe this will, the testator intended that, upon his death, the three-elevenths interest in the trust fund would be held by the trustees until the death of both Helen E. Clark and Florence E. Bates, and that upon their death whatever portion remained, would become the absolute property of Albert B. Bates, W. Scott Bates, and George E. Bates, or the survivor or survivors of them. Since W. Scott Bates and George E. Bates, at the time of the death of Helen E. Clark, the last survivor of Helen E. Clark and Florence E. Bates, were the only survivors of the named three, Albert B. Bates, W. Scott Bates and George E. Bates, it follows that, upon the death of Helen E. Clark, W. Scott Bates and George E. Bates became entitled to the possession of whatever portion of the three-elevenths of the trust found that then remained with the trustees.

The judgment should be reversed and the cause remanded with directions to enter a decree not inconsistent with this opinion, and it is so ordered. *Ferguson* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.