ADELINE HOFFMAN COLEY, CARL M. BAIRD, MELVIN F. BAIRD, KENNETH S. BAIRD and DOROTHY M. BAIRD v. BURT C. LOWEN, OTY LOWEN, DUKE LOWEN, WILLIAM LOWEN, HARRY YEATS, WILLIAM YEATS, LEO YEATS, NELLIE SUMMERS, ANNIE SOLDONI, MARGARET POSTELWAIT, GLADYS YEATS, ALBERTA YEATS, JOHN B. YEATS, GEORGE A. YEATS and EDWARD L. YEATS, Appellants.—No. 40270.—211 S. W. (2d) 18.

Division One, April 12, 1948.

Rehearing Denied, May 10, 1948.

*Mary O'Reilly* and *George W. Meyer* of *Meyer, Smith & Wetzel* for appellants.

*Rufus Burrus* and *Harvey Burrus* for respondents.

[19] VAN OSDOL, C.—Appeal from a judgment in an action in partition in which action and judgment the title to two one-third interests in real estate was tried and determined to be in respondents. The determination of the ownership of the interests in the described eighty acres of land is dependent upon the interpretation of the will (particularly Item IV of the will) of Napoleon Bonaparte Stone, who died February 16, 1883, survived by his widow Emily; by his daughters, Addie, Anna and Margery; and by his grandson, Napoleon B. Crisp, a son of the daughter Anna.

By Item I of the will, executed February 6, 1877, testator devised lands to his wife during widowhood, and by Item II bequeathed personalty to his wife. By Item III testator devised to his daughter Anna, the wife of John T. Crisp, for and during her natural life only, lands in the Item III described, "and the remainder in said real estate is bequeathed to my said daughter Anna during her life (sic). I give and bequeath to the children of the said Anna in equal portions forever, and in the event of the death of any of her children leaving descendants, the descendants of each deceased child shall take the same share the parent, if living, would have been entitled to."

By Item IV of his will testator devised "*to my daughter, Addie Stone, for and during the period of her natural life only,* the following described real estate (the description includes the real estate, title to the two one-third interests in which land is herein involved) situated in said County of Jackson . . . *and the remainder therein I give and bequeath to the children of said Addie, if she shall marry and leave issue, in equal portions forever, and in the event of her leaving at her death descendants of a deceased child, such descendants shall be entitled to the same share the parent, if living, would have been entitled to. But if the said Addie shall die unmarried, or married and leaving no children or their descendants, then I give and bequeath the remainder in said real estate in this item specified to Napoleon B. Crisp, son of John T. and Anna Crisp, and to his heirs forever.*" (Our italics.)

By Item V testator made provision for his daughter, Addie, in the event she should marry one Ross.

By Item VI testator devised to his daughter Margery "for and during the period of her natural life only (lands in the Item VI described) and the remainder therein (sic). I give and bequeath to the children of the said Margery, if she shall marry and leave issue, in equal portions forever, and in the event of her leaving at her death

descendants of a deceased child, such descendant shall be entitled to the same share the parent, if living, would have been entitled to. But if the said Margery shall die leaving no children or their descendants, then I give and bequeath the said remainder in said real estate in this item specified to her surviving sisters or their descendants in case of the death of either leaving descendants forever, the descendants of a deceased sister to take the same share the parent, if living, would have been entitled to. . . . . "

By Item VII testator disposed of the residue of his estate (including a remainder in lands after the estate during widowhood devised to his wife by Item I) "to my three children or their descendants," in case of the death of either leaving descendants, in equal portions forever, unless the daughter Addie should make the marriage [20] mentioned in Item V, and, in that event, "neither she or her descendants, in case of her death, shall be entitled to receive or take any portion of said remainder, but the share the said Addie would otherwise be entitled to take in said residue shall be equally divided between the said Anna Crisp and Margery Stone or their descendants, in case of the death of either leaving descendants; the descendants of either to take and receive the same share the parent if living would have been entitled to."

Prior to testator's death, his daughter Addie married John M. Smurr. There were three children born to the marriage—Ellen, born in 1883; Mabel, in 1886; and James, in 1891.

Ellen was born on the day of testator's death, but it is not known whether her birth was before or after the hour testator died. She married Fred M. Hoffman, and died in 1921. She was survived by her daughter, Adeline Hoffman Coley, a respondent herein.

Mabel married Carl J. Baird, and died in 1928. She was survived by her four children—Carl M., Melvin F., Kenneth S., and Dorothy M. Baird, respondents herein.

James survived his mother, Addie.

Addie Stone Smurr, testator's daughter, mother of Ellen, Mabel and James, and grandmother of respondents, died in 1937.

November 9, 1885, a proceeding was instituted in the probate court for the sale of Ellen's interest in the land, which interest was described in the proceeding and in the subsequent guardian's deed as a "vested remainder." The guardian executed his conveyance dated February 18, 1886, to William A. Yeats for a consideration of $3675. When James, the younger of the two other and later born children of Addie, attained his majority, all three children of Addie shared in the guardian's distribution of the monies received from the sale to Yeats. February 18, 1886, Addie and her husband by quitclaim deed conveyed all their interest in the lands to Yeats. April 24, 1914, prior to the deaths of Ellen and Mabel, the mother Addie joined with them and with James in a conveyance to the heirs of William A.

.Yeats for a consideration of $1500. Through this conveyance, and through the guardian's deed and the quitclaim deed from Addie and husband, appellants claim title.

. Appellants .stress the language of. Item IV, "and the remainder therein. I give and bequeath·to the children of said Addie, if she ·shall marry and leave issue, in equal portions forever." It is appellants' view that as the children of Addie were born they became vested with the fee which was defeasible only in the event Addie (having married) failed to leave issue. Appellants urge that, Addie having married and having been survived by issue, the event which might have divested the fee did not and now can never happen. Appellants say this court has so ruled in the case of Dodge v. Hall, Mo. Sup., 37 S. W. 2d 585. Having thus disposed of the clause, "if she shall marry and leave issue," appellants assert the language "and the remainder therein I give and bequeath to the children of Addie . . . in equal portions forever" created an absolute and unqualified remainder in the children of Addie, citing Chew v.·Keller, 100 Mo. 362, 13 ·S. W. 395.; Tindall v. Tindall, 167 Mo. 218, 66 S. W. 1092; Stevenson v. Stearns, 325 Mo. 646; 29 S. W. 2d 116. The appellants then argue the subsequent clauses of the Item IV which purport to devise substitutional or alternative remainders are not so clear, concise and unequivocal as to "cut down or divest the absolute unqualified remainder created" by the prior clause of the item.

It is the position of respondents that, until the death of Addie, her children as they were born had no more than executory or contingent interests; that the will had the effect of vesting the fee simple title only in the children of Addie who survived her; and that Ellen and Mabel, having died before Addie, never became vested with an absolute estate in remainder, and the respondents became vested with an estate in fee simple in two one-thirds of the described land upon their survival of Addie.

The language, "the remainder therein I give and bequeath to the children of said Addie, if she shall marry and leave issue, [21] in equal portions forever," standing alone, is a devise of a remainder and not an unconditional devise immediately to the children of Addie, as was the fourth clause of the will devising land immediately to the testator's son, John Roy, in Dodge v. Hall, supra, which fourth clause, standing alone, unquestionably gave John Roy a fee simple· title. Nor was it as unequivocal in devising an absolute estate as was the devise of the undivided ninths immediately to the beneficiaries to have and to hold "as tenants in common to them and their heirs forever" in the case of Chew v. Keller, supra. Nor did the quoted language of Item IV, considered apart from the rest of the item, clearly create a fee simple title in Addie's children, subject only to another's control for life, as in the case of Stevenson v. Stearns, supra. Considered as a devise to a class, the quoted language is not

unequivocal in devising a vested remainder in fee simple in the children of Addie, as is the language of the deed granting lands to grantor's daughter for life "and then to the issue of her body forever" in the case of Tindall v. Tindall, supra. And the context of the other and subsequent clauses of the will in the instant case differs from that of the wills in the cases cited by appellants.

On the other hand, the quoted language of the Item IV did not expressly devise the remainder in fee simple upon the death of Addie to her children, "then living," as did the deed grant in the case of Emison v. Whittlesey, 55 Mo. 254, cited by respondents. Nor did the clause say the remainder was to go to the children of Addie "that are alive" at her death, as did the will in the case of De Lassus v. Gatewood, 71 Mo. 371.

The clause, "if she shall marry *and leave issue*," is interposed between the devise of the remainder to the children of Addie and the phrase, "in equal portions forever," as if the clause might have been intended to state the events which should precede the vesting of the remainder in the children of Addie "in equal portions forever." The interposed clause is not in itself clear, and in itself raises a tentative query—did the testator intend the children of Addie should survive their mother in order to share in the devise of the land "forever." And what did the testator mean by his use of the word "issue"?

Thus far we have not considered all of the clauses of the Item IV, nor have we, in our discussion, examined the will from its four corners; nor have we viewed the circumstances surrounding the testator when the will was executed. We should not interpret the will by considering only an isolated clause of Item IV, but we should search throughout the whole will's provisions for the disclosure of the testator's true intent and meaning.

"At the present time, there are a few well settled rules to be applied in the construction of wills, and these are so generally accepted that citation of authority is not needed to further establish them. The prime rule of construction is that the court, without attempting to make a new will or an equitable distribution of the estate, must confine its endeavors to ascertaining the real intent of the testator. To this end the will must be read from its four corners and effect given to all its plain provisions, provided, of course, they are not in violation of law. If there is doubt as to the proper construction of the will, after its own provisions and language are fully considered, then the court has the right, in aid of construction or interpretation, to consider the circumstances surrounding the testator at the time of making it." First Trust Co. v. Myers, 351 Mo. 899, 174 S. W. 2d 378.

Passing on to an examination of the other parts of the Item IV, there will be seen the clause, "and in the event of her (Addie's)

leaving *at her death* descendants of a deceased child, such descendants shall be entitled to the same share the parent, *if living, would have been entitled to."* Such is a clear expression of testator's intention to substitute a disposition of a parent's share to the descendants of a child born to, but predeceasing, Addie.

We are now in a position to see the testator's word "issue" as used in the interposed clause, "if she shall marry and leave issue," means *children* of Addie *or their descendants.* We are furthermore in [22] a position to assume testator did not intend to devise the absolute estate to those children of Addie or their descendants who did not survive Addie. This is confirmed by the last clause or sentence of the Item IV whereby testator undertook to devise an alternative remainder in fee simple ·to the son of his daughter Anna, if "Addie shall die . . . leaving no children or their descendants." Considering all the language used in the Item IV, it seems clear the termination of the particular (life) estate was intended as ·the time when those who might take the absolute estate in fee simple were to be ascertained. Since the individual and possible takers in fee simple (among the children of Addie or their ·substituted descendants, or, in the alternative, the son of Anna) were uncertain and could not be ascertained until the death of Addie, it could be said their interests, until the death of Addie, were contingent. Grenzebach v. Franke, 315 Mo. 392, 286 S. W. 79; Sullivan v. Garesche, 229 Mo. 496, 129 S. W. 949; Dickerson v. Dickerson, 211 Mo. 483, 110 S. W. 700; De Lassus v. Gatewood, supra; Emison v. Whittlesey, supra. ·See also Bates v. Bates, 343 Mo. 1013, 124 S. W. 2d 1117; Dwyer ·v. St. Louis Trust Co., 286 Mo. 481, 228 S. W. 1068; Vol. 4, Thompson on Real Property, sec. 2221, pp. 759-760.

While a remainder cannot be limited after a fee simple, "yet, it is nevertheless true that two or more concurrent fees by way of remainder, one as an alternative for the other, may be limited on the same particular estate, only one of which remainders can·take effect in possession. An example is where a devise is made to A for life, and, if he have issue male, then to· such issue male and his heirs forever, but, if he die without such issue, then to B and his heirs. So far as regards the particular estate, each of these alternative interests is a remainder, but neither is a remainder as regards the other. Being alternative or. substitutional in· their nature, they are necessarily ·contingent." Vol. 4, Thompson on Real Property, Permanent Edition, sec. 2223, pp. 761-762; Vol. 2, Tiffany, The Law of Real Property, 3d Ed., sec. 333, pp. 55-6.

It is so far our view Ellen and Mabel, children of Addie, had mere contingent interests which could have ripened into an· absolute estate upon their *survival* of Addie. Since they died before Addie's death, the shares they, "if living, would have been entitled to" were

vested absolutely at Addie's death in their respective descendants, respondents, who survived the death of Addie. Our examination of the whole will (we believe we have set out, supra, those parts of the whole will which are pertinent to our case) discloses nothing out of harmony with our tentative interpretation of the Item IV.

We are not especially concerned about what technical interest or estate Ellen and Mabel acquired when they were born; but we are especially anxious to ascertain what dispositions testator intended to make and give his intention effect, if his intended dispositions were lawful. Now if, as appellants contend, Ellen and Mabel when they were born became vested with a remainder in fee, yet, as we have said, it is clear testator intended to make substituted dispositions to the descendants of a child or children born who might die before Addie. So such remainder (if vested) in Ellen and Mabel should be considered a defeasible fee which was divested as to their individual shares upon their deaths during the life of Addie. See now Vol. 2, Underhill, A Treatise on the Law of Wills, sec. 867, pp. 1311-1312.

Now when the will was executed the testator's daughter Addie was unmarried, and testator did not know she would marry, but testator appears to have been thoughtful of grandchildren, children of Addie, or their descendants, if Addie married and died leaving "issue." It seems he must have wanted to provide stirpes for the possible "issue" of Addie. At the time the will was executed testator had but one grandchild in being, Napoleon B. Crisp, the son of the daughter Anna; If Addie never married, or having married had no issue living when she died, testator wanted his grandson Napoleon to have the property. Obviously he could not name in his will, as individuals, the unborn children of Addie. He could only think of and provide for them as a class, which could be described [23] as "children" of Addie, which class upon the birth of one or more of the class might yet fail or increase or decrease in number. So we see he devised a particular (life) estate to Addie; and the language of the whole Item IV manifests the termination of the particular estate, at the death of Addie, as the intended time of ascertainment of those children of Addie who would become vested with the remainder in "equal portions forever." And it is our interpretation that testator intended, in the event children were born to Addie, one or more of which predeceased her, the share or shares which the deceased child or children, if living, would have "been entitled to" should become absolutely vested, at Addie's death, in those descendants (of the deceased child or children) who survived Addie.

It follows that respondent, Adeline Hoffman Coley, is the absolute owner of an undivided one-third interest in the described land; and that respondents, Carl M., Melvin F., Kenneth S., and Dorothy M.

770

Baird are the absolute owners of an undivided one-third interest in the described land.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.