W. R. DICKERSON et al. v. B. K. DICKERSON et al., Appellants.

### Division One, April 13, 1908.

1. **REMAINDERS: Presumption.** The law favors vested remainders, and where there is any reasonable doubt as to whether the estate created is a vested or contingent remainder the courts resolve the doubt in favor of a vested remainder. But in this case the will clearly created a contingent remainder.

2. ————: **Contingent: To Surviving Children.** By the will the testator gave to his wife the use and income of his dwelling house and the two hundred acres of land in controversy, "to have and to hold the same for her during the term she may remain my widow. If she marries or ceases to be my widow, the farm then reverts to my children, to be equally divided between them, and at her death the said farm to be divided between my surviving children, and grandchildren if any whose parents are dead." *Held,* that the will created a contingent remainder in the children, which vested in the children alive at the wife's death, and a child who died before she did leaving no children of his own took no interest in the estate.

3. ————: ————: ————: **When Estate Vested.** Where the will gave a life estate to the widow and added that "at her death said farm shall be divided among my surviving children," it did not vest the estate in such of the children as were living at the time the will was made, or in such of them as survived the testator, but in those who survived the widow. And if a child died before the widow, he took nothing under the will.

4. ————: ————: ————: **Cloud Upon Title.** Where a son who took no interest under the will in the land, nevertheless conveyed his supposed interest by deed, the court, at the suit of the real owners, will set the deed aside as a cloud upon the title.

Appeal from Macon Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

AFFIRMED.

*Guthrie & Franklin* and *Dysart & Mitchell* for appellants.

Under the will of P. H. T. Dickerson, George B. Dickerson, his son, took a vested remainder in the land in question in this suit that he could convey at pleasure, and his deed, dated March 7, 1902, passed the title to said land to the parties therein. · The courts favor strongly that construction which makes a remainder a vested rather than a contingent remainder. Tindall v. Tindall, 167 Mo. 218; Gates v. Seibert, 157 Mo. 254; Chew v. Keller, 100 Mo. 362; 2 Underhill on Wills, pp. 228, 229; Tindall v. Miller, 41 N. E. 535; Byrnes v. France, 131 Mo. 639; 4 Kent's Commentaries (2 Ed.), 228, 229; Tiedeman on Real Property (2 Ed.), par. 397.

*Campbell & Ellison* and *Joseph Park & Son* for respondents.

The will of P. H. T. Dickerson created a remainder · in all of his children and grandchildren surviving his wife. De Lassus v. Gatewood, 71 Mo. 371; Rinquist v. Young, 112 Mo. 25; Aubuchon v. Bender, 44 Mo. 560; Emison v. Whitelsey, 55 Mo. 254; Owen v. Eaton, 55 Mo. App. 567; Wombles v. Young, 69 Mo. 117. If the grantor dies in the lifetime of the life tenant and before the contingent remainder becomes a vested one, the grantee takes nothing by the deed. Emmerson v. Hughes, 110 Mo. 627; Godman v. Simmons, 113 Mo. 122.

WOODSON, J.—This cause originated in the circuit court of Adair county, and was instituted by plaintiffs against the defendants to have a quitclaim deed made by George B. Dickerson to the defendants, purporting to convey certain real estate, set aside and for naught held. The plaintiffs and defendants are the only heirs at law of said George B. Dickerson,

deceased; and plaintiffs and defendants, including said George B. Dickerson, were the children of one P. H. T. Dickerson, with the exception of Walter R. Dickerson, who is his grandson and a son and only heir at law of Joseph Dickerson, deceased.

The petition stated that at the time said deed was executed George B. Dickerson was *non compos mentis,* and that the deed was procured through a conspiracy, fraud and undue influence of defendants exercised over the mind of George B. Dickerson, and that it had never been delivered by the deceased.

The answer, in effect, was a general denial.

The cause was submitted to the court on the pleadings and evidence, and its finding was against the plaintiffs and in favor of the defendants upon the issues, and it decreed that the deed conveyed to the defendants all the interest that said George Dickerson had in the real estate therein described. To that action of the court, the plaintiffs saved no exceptions. But the court did not stop there; but proceeded and decreed that said George B. Dickerson took only a contingent interest instead of a vested interest in the two hundred acres described in said deed, under the will of P. H. T. Dickerson, which is as follows:

"Know all men by these presents: That I, P. H. T. Dickerson, of the county of Adair, and State of Missouri, being in good health and of sound and disposing mind and memory, do make and publish this my last will and testament, hereby revoking all former wills by me made at any time heretofore. And as to my worldly estate and all the property, real, personal or mixed of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, I devise, bequeath and dispose thereof in the manner following, to-wit:

"First. My will is, that all my just debts and funeral expenses shall by my executors hereinafter

named be paid out of my estate as soon after my decease as shall by them be found convenient, also my executors shall purchase out of the estate a monument to be placed at my grave in case there is none there.

"*Item.* I give, devise and bequeath to my beloved wife, Catherine I. Dickerson, all my household furniture. I also give to her the use and income of my dwelling-house and land of two hundred acres, being and situated in Wilson township, county of Adair and State of Missouri, to have and to hold the same to her for and during the term that she may remain my widow. If she marries or ceases to be my widow, the farm then reverts to my children, to be equally divided between them, and at her death said farm to be divided between my surviving children, and grandchildren if any whose parents are dead.

"All the rest and residue of my estate, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at my decease, I give, devise and bequeath to be equally divided between my wife Catherine I. Dickerson and my children, excepting James G. Dickerson, he, the said James G. Dickerson, two hundred dollars less than the other heirs.

"And, lastly, I do nominate and appoint my wife, Catherine I. Dickerson, and my son, W. H. Dickerson, to be the executors of this my last will and testament."

The record discloses the fact that George B. Dickerson departed this life on March 7th, 1902, sometime previous to the death of his mother, Catherine I. Dickerson.

Upon that state of facts, the court below found and decreed that the contingent interest of George B. Dickerson in and to the land in question, acquired under said will, became extinct upon his death, and that the quitclaim deed mentioned conveyed no interest in said lands to the defendants, and adjudged that it

be cancelled and held for naught. From that judgment defendants have duly appealed to this court.

I. P. H. T. Dickerson was the common source of title, and through whom all the plaintiffs and defendants claim title to the land in controversy. All claim title through his will, and subject to the life estate devised thereby to his widow, Catherine I. Dickerson; but as she had departed this life prior to the institution of this suit, her life estate is not involved in this litigation.

The defendants contend that George B. Dickerson took a vested interest in the two hundred acres of land under said will, and that he, by said quitclaim deed, conveyed that interest to them, and that they are the lawful owners thereof in fee; while, upon the other hand, the plaintiffs claim that the will only gave George B. a contingent interest in said land, and he having died before his mother, the contingent interest conveyed by said quit-claim deed to defendants became extinct, and that said deed is a cloud upon the title.

That is the sole contention between the plaintiffs and defendants. If the will gave to George a vested interest, then the judgment is erroneous and should be reversed; but if it gave him only a contingent interest, then the judgment is for the right party and should be affirmed. In order to determine that proposition correctly, we will have to examine the will and gather therefrom the intention of the testator. That intention, whatever it may be, must prevail.

The clause of the will out of which this litigation grows is in the following words: "I also give to her the use and income of my dwelling-house and lands of two hundred acres, being and situated in Wilson township, county of Adair and State of Missouri, to have and to hold the same to her for and during the term that she may remain my widow; if she marries or ceases to be my widow, the farm then reverts to my

children, to be equally divided between them, and at her death said farm to be equally divided between my surviving children and grandchildren if any whose parents are dead.''

The law favors vested remainders, and where there is any reasonable doubt as to whether the estate created is a vested or a contingent remainder, the courts will resolve that doubt in favor of the former and against the latter. It is the policy of the law, and it holds that estates vest at the earliest possible period, unless there is a clear manifestation of a contrary intention on the part of the testator. [2 Washburn on Real Property (6 Ed.), secs. 1537, 1538, 1544; Chew v. Keller, 100 Mo. 362.]

But notwithstanding that presumption, the plaintiffs have assumed the laboring oar and have undertaken the burden of convincing us that it was the intention of the testator, P. H. T. Dickerson, to create a contingent remainder in favor of his children, and not a vested remainder.

This brings us to a consideration of the rules of law by which the courts must be governed in the determination of what are contingent remainders.

Mr. Washburn, in his excellent work on Real Property, defines a contingent remainder in the following language: ''A contingent remainder is one whose vesting or taking effect in interest is, by the terms of its creation, made to depend upon some contingency which may never happen at all, or may not happen within a requisite prescribed time, by reason whereof its capacity of vesting or taking effect in interest may be forever defeated. Or, in the language of another, it is one 'which is limited to a person who is not ascertained at the time of the limitation, or which is referred for its vesting or taking effect in interest to an event which may not happen till after the determination of the particular estate,' or upon the happening of some uncertain and doubtful event, or where the person to

whom it is limited is not ascertained or yet in being.. Until the contingency has happened, the remainder is rather a *possibility* in its character than an estate; although it has become a familiar *quality of an estate,* to understand and apply which involves much nice learning. It is always an executory interest from its very nature." [2 Washburn on Real Property (6 Ed.), sec. 1555.]

The same learned author in the succeeding section, 1556, gives many illustrations of the rule above announced, and among them are the following: "Suppose an estate be limited to A for life, remainder to the oldest son of B, who then has no son. The contingency in that case is that of a son being born to B. If he has a son, the moment he is born the remainder becomes vested in him, and ceases to be contingent. If the uncertain event fails to happen at all, the remainder fails for want of a person to take it when the particular estate determines, and the estate reverts at once to the grantor. So, where there was a devise to a wife for life, and at her death to be divided to and among such of testator's children as should then be living, share and share alike, it was held a contingent remainder; if one of these died in her lifetime, his share was lost, although he left a child. The latter took nothing. Another instance would be that of an estate to A for life; and if B outlived him, then to B in fee. There is here no contingency about the person who is to take, but the contingency is in the event of his outliving A; for if he die before A, though all along ready to take the remainder if it falls in, the remainder as such goes to no one. If A die first, the remainder not only becomes vested in interest but at once in possession. Another and familiar illustration would be where this estate was limited to A for life, remainder to B after the death of A and H. Here B is a known person *in esse,* ready at all times to take the remainder. It is cer-

tain that A will die, and that H will also.   The con-
tingency is in the doubt whether H will die before A.
If he does, the grant is thereupon converted into a
simple limitation of an estate to A for life, with a re-
mainder to B, and is a vested one.   But if A die first,
B's remainder is wholly gone, because he can only take
it when A and H are both dead; and by the death of
A before H, the particular estate in A determines be-
fore B can take, and, consequently, his remainder fails,
and the estate reverts to the grantor.   And to these
may be added, for further illustration, a conveyance in
trust for the grantor for life, and after his death to A,
when and provided he attain the age of twenty-one
years.   The interest of A was held to be a contingent
remainder until he arrived at that age."

Other equally eminent authors define a contingent
remainder as follows:   "Where the estate in remain-
der is limited to take effect either to a dubious and
uncertain person, or upon a dubious and uncertain
event." [2 Black. Com., 169.]

Mr. Bingham, in his able work on Descents, at page
125, thus defines it:   "A contingent remainder is that
part of an estate in fee bestowed conditionally upon
one of two or more persons, which one is not certain;
the rest of which is bestowed definitely upon some
other person or persons named.   The part not thus
definitely disposed of to some particular person or
persons is provided to go to some other person or per-
sons of two or more named, which of the two or more
is left uncertain, and is to be fixed and made certain by
succeeding events.   The remainder itself is certain, but
the person who is to have it is uncertain until it is de-
termined by the events named."

If we will bear in mind those definitions and illus-
trations of contingent remainders, we can more readily
see and understand the principle upon which the fol-

·lowing decisions are predicated, and which bear a close resemblance to the case at bar.

The first case I will refer to is that of Thomson v. Ludington, 104 Mass. 193. The will in that case was as follows:

"I give, devise and bequeath to my present wife, Julia Ludington, all my estate, real, personal and mixed, to and for the uses and trusts following, to-wit: In trust to use and enjoy the same as she now does, she taking care of and maintaining my children, so far as the same will maintain them during the period of her widowhood, and at her decease or marriage then further in trust to divide the same equally to and among such of my children as shall then be living, share and share alike. The names of my said children are: George C., Ann L., Lucy M., Francis A., and Caroline E., to them and to their heirs and assigns forever."

"The widow survived, unmarried, and signed the deed, as did all the children named in the will, except Ann L., who died some years after the testator, leaving one child, Lucy C. Hapgood, who was born a few weeks before the testator's death. If Lucy C. had any interest in the premises, judgment was to be for the plaintiff, otherwise for the defendants."

In passing upon that case, Mr. Justice GRAY said: "The devise at the death or marriage of the widow 'to and among such of my children as shall then be living, share and share alike,' gives a contingent remainder to such of the children as shall be living when the contingency of such death or marriage happens. In the next clause, the testator gives the names of 'my said children,' that is, of all those already described as 'my children;' for he could not foretell which of them would be living at a future time; and this clause does not extend the effect of the previous one, by which such of them only as shall be living upon the happening of

the contingency are to take. The further words 'to them and their heirs and assigns forever, do not describe the devisees, but the quantity of their estate, or, in other words, merely show that the estate to be taken by virtue of the previous words is an estate in fee. The daughter who died after the testator and before his widow therefore took no estate, and none passed to her child.''

The same court in the case of Olney v. Hull, 21 Pick. 311, held that where the devise was to the widow during her widowhood, and with this clause added: ''Should my wife marry or die, the land then shall be equally divided among my surviving sons,'' the remainder to his sons was contingent until the marriage or death of the widow; and that upon her death the estate vested in a son who was then living to the exclusion of the heirs of another son who died before the widow but after the death of the testator; and in so holding, Mr. Justice MORTON said: ''He says, 'Should my wife marry or die, the land then shall be equally divided among my surviving sons.' The time when the estate was to be divided among the sons is certain and definite. It was when the intermediate estate terminated by the death or marriage of the tenant. Among whom was it to be divided? Not those who survived any prior event, not those who survived the father, but those surviving that particular event—those surviving the death or marriage of the widow.'' ·

Judge NAPTON said, in the case of Emison v. Whittlesey, 55 Mo. l. c. 258, involving a similar question: ''This was a conveyance to the mother, and upon her death the remainder was conveyed to her children who survived her, and the children of such of her children as were dead, at her decease. At the time of the execution of the deed it was impossible to say that any one was in existence who would take the remainder. No one could tell that any of the children would sur-

vive the mother. It was, therefore, a contingent remainder.''

And lastly, but not least in point, with great clearness and much force, Judge SHERWOOD in the case of De Lassus v. Gatewood, 71 Mo. l. c. 380 and 381, speaking for the entire court in the adjudication of a similar will, said: ''Let us apply in the present instance the principle to be deduced from the foregoing authorities and cases cited. Here the testator says: I give and bequeath unto my beloved wife, Eleanor DeLassus, all my property, etc., etc., to have and to hold at her will and pleasure during her natural life or widowhood. And, at the death or marriage of my said wife, it is my will that all my estate, heretofore bequeathed, shall be equally divided between my children that are alive, or their bodily children, to-wit: (naming the children) in equal shares or proportion. The question at once arises, to what period of time do the words 'that are alive' refer? Obviously, I think, to the death and marriage of the wife, and I am of this opinion for these reasons: One, That the will speaks from the death of the testator and not from the time of its execution. Others, That it would be most unreasonable to suppose that the testator having mentioned his children by name did not know that they were then alive. And yet we must indulge such unreasonable supposition if those words are to be referred to the time the will was executed, and not to a future period when the death or marriage should occur. If those words refer to the time the will was being drawn, then they are absolutely meaningless, and utterly destitute of any intelligent expression. If, on the contrary, we judge them to refer to the future event of either death or marriage, they become at once significant. And it would seem beyond question, both from the grammatical construction of the sentence, as well as from other considerations already adverted to, that those words can be referred only to the event

in the future which was to cause the termination of the particular estate, and the commencement of that in remainder. When is the estate to be divided? At the death or marriage, etc. Among whom divided? The children 'that are alive,' or their bodily children. Alive when? When the division of the estate is to occur. It appears very plain that the above are the only answers that can with any show of reason be returned to the foregoing questions. If this be true, then the will under consideration is to be held as bearing the same meaning as if the words composing it were transposed and it read thus: It is my will that all my estate heretofore bequeathed shall, at the death or marriage of my said wife, be equally divided between my children that are alive, or their bodily children. If these views are correct, if the words 'that are alive' refer to the future, refer to the time when the particular estate was to cease, and the estate in remainder was to take effect, then it must needs follow that those words are the legal equivalents of 'then living,' in which case they come within the rule of the authorities already quoted, and the remainder created by the will must be held a contingent, and not a vested one; for, until the death or marriage of the tenant of the particular estate, it was impossible to ascertain who of the children of the testator, or their bodily children, would be alive to take in remainder. . . . As the remainder in this case was contingent, neither Felix M. DeLassus, nor his bodily child, William A., had any descendible interest which could pass to the plaintiff (Bingham on Descents, 222, 233), and so she cannot maintain her action.''

We will now consider the will in question viewed in the light of the foregoing authorities. A similar question may be propounded here to the one asked by Judge SHERWOOD, in the DeLassus case, *supra*. To what period of time do the words ''my surviving children and grandchildren, if any whose parents are

dead," refer? Clearly, in my judgment to the date of the death or marriage of the testator's widow. A will becomes effective from and after the death of the testator and not, like a deed, from the time of its execution. And, as was said by the court in the case last mentioned, "It would be most unreasonable to suppose that the testator having mentioned his children by name did not know that they were then alive. And yet, we must indulge such  unreasonable supposition,  if those are to be referred to the time the will was executed and not to a future period when the death or marriage should occur."

And if those words referred to the death of the testator, why did he provide in the will that upon the death or marriage of his widow, the farm should then go to his children, and further provide in the same clause of the will that the land should at that same time be divided equally between his "surviving children, and grandchildren if any whose parents are dead?" If it was the intention of the testator to give the farm to such of his children as were living at the time of his death, then we are unable to see what he meant by the use of the words "and at her death said farm to be equally divided between my surviving children and grandchildren, if any whose parents are dead." Conceding the testator, at the time of his death, knew which of his children were then living, yet neither he, because of his death, nor any other person could tell which of his children would be dead and leave living children at the time of the death or marriage of the testator's widow. And yet, by the express terms of the will the estate was not to terminate until the happening of one of those events, and at the same time the remainder was to pass to and be divided equally between his children and grandchildren then living. There was not only an uncertainity as to which of his children would be alive at the time of the termination of the particu-

lar estate; but there was also a further contingency which could not be foreseen, and that was which, if any, of his children would be dead, leaving surviving children at the marriage or death of the widow. If, upon the other hand, those words refer to the death or marriage, they become of much significance by making definite and certain the persons who are to take the remainder after the termination of the particular estate.

If they refer to any other time or event, then they are utterly meaningless and wholly without force or effect. Such a construction should not be placed on a will. One of the cardinal rules of construction is to gather the intention from the four corners of the instrument and give full force and effect to each and every part of it, when it is possible to do so. [Turner v. Timberlake, 53 Mo. 371; Allison v. Chaney, 63 Mo. 279; Reinders v. Koppelman, 94 Mo. 338; Preston v. Brant, 96 Mo. 552; Chew v. Keller, 100 Mo. 362.]

The foregoing construction is borne out by asking the question, when is the farm to be divided? The will says at the widow's "death." Among whom is it to be divided? According to the will, "equally divided between my surviving children, and grandchildren if any whose parents are dead." Surviving when? At the time the division of the estate is to be made—that is, upon the marriage or death of the widow.

The provisions of the will in the case at bar are almost identical in words and meaning with those of the will in the DeLassus case, *supra*, as transposed by Judge SHERWOOD on page 381; so much so that we are unable to differentiate between the meaning of the two. In our opinion that case is decisive of this.

The learned counsel for defendant, however, contend with much earnestness and force that the estate was to vest in the children of the testator at the time of his death, and not at the time of the marriage or death of his widow, and cite the following authorities

in support of their contention: Tindall v. Tindall, 167 Mo. 218; Gates v. Seibert, 157 Mo. 254; Chew v. Keller, 100 Mo. 362; 2 Underhill on Wills, pages 228-9; Tindall v. Miller, 41 N. E. 535.

We have carefully read all of those cases, and we are of the opinion that they contain nothing which announces a different doctrine from the views above expressed. The language of the instrument involved in those cases is so radically different from that used in the will now under consideration, that the law applicable to them has no application to the case at bar.

We are, therefore, of the opinion that the remainder given to the testator's children and grandchildren was a contingent and not a vested remainder, and that the contingent interest devised to George B. Dickerson by the will became extinct by virtue of his having departed this life prior to the death of the widow; and, consequently, the quit-claim deed in question became inoperative and void upon his death. Had he survived the widow, then, clearly, the deed would have passed his estate in the lands to the defendants.

We are, therefore, of the opinion that the deed is inoperative, null and void, and casts a cloud upon the title to the land in controversy; and that it should be declared null and void and of no force or effect; and that the judgment should be affirmed, and it is so ordered.

All concur, except *Lamm, J., dubitante.*