A. R. BYRD, JR., SALLIE HUNTER BYRD, CLAIRE BYRD DRESBACK, ELIZABETH BYRD BAYLOR, C. O. BYRD, E. R. BYRD and JOSEPH HUNTER BYRD, Appellants, v. JOSEPH H. ALLEN and IRMA ALLEN, His Wife, THOMAS B. ALLEN and JUANITA ALLEN, His Wife, and FRANCES VIOLA HOUCK HOUSER and NORWIN HOUSER, Her Husband.—No. 38036.—171 S. W. (2d) 691.

Division Two, September 8, 1942.

Rehearing Denied, March 25, 1943.

Motion to Transfer to Banc Denied, June 7, 1943.

100

*Drake Watson* and *Giboney Houck* for appellants.

*Joseph H. Allen, James M. Reeves, H. C. Blanton* and *Norwin D. Houser* for respondents.

104

BOHLING, C.—Plaintiffs' petition is in two counts. The first seeks to quiet and determine title in plaintiffs to an undivided one-third interest in approximately one thousand acres of land and attacks the validity of two deeds to Virginia Hunter Houck—one from Joseph Hunter and wife; the other from residuary devisees of Joseph Hunter. The second count seeks the reformation of said deed from Joseph Hunter and wife if it be [692] determined that

said deed was executed, acknowledged and delivered. The common muniment of title is the will of Joseph Hunter, deceased. He was survived by his widow, Emeline Hunter; and his children, Sallie Hunter Byrd and Abram R. Hunter, children of his first marriage, and Robert Lee Hunter (frequently designated in the record as Lee Hunter), Virginia Hunter Houck (frequently designated in the record as Jennie Houck), and two grandsons, Joseph H. Allen and Thomas B. Allen, Jr., sons of a deceased daughter, Emma Hunter Allen, descendants of his second marriage. Plaintiffs are children of Sallie Hunter Byrd. (Defendants Lee Hunter and Ollie Hunter, his wife, are excluded in our references to defendants. They filed no answer or disclaimer nisi and present no contention here.) There is no controversy between the several defendants as to their respective interests and it would unnecessarily encumber the record to give the details of the judgment and decree nisi. Sufficient for the purposes here and subject to the observations hereinafter, Jennie Houck devised the lands to Joseph Hunter Allen and Thomas B. Allen (Jr.), subject to an annual charge thereon of $600 in favor of Frances Viola Houck Houser, an adopted daughter of Jennie. The judgment and decree nisi sustained Jennie Houck's disposition of the lands and plaintiffs appealed.

Principally, the controversy involves a devise to Jennie Houck, the residuary clause of Joseph Hunter's will, an agreement between Joseph Hunter's residuary devisees and the deeds, especially one to Jennie Houck, executed in connection with said agreement. Joseph Hunter died September 20, 1911, well advanced in years. His will was executed April 20, 1903, and carried six codicils, the last being dated November 9, 1908.

Joseph Hunter's will contained a devise to Jennie Houck, reading:

"Paragraph 4. I have heretofore conveyed my deed to my daughter, Jennie Houck, during her natural life and then to the heirs of her body, the following described lands situate, lying and being in the county of New Madrid and State of Missouri, to wit:

[Here are described certain lands embracing those involved in this litigation. Then:]

"In the event that said grantee die without said issue, then the above mentioned property to descend: 1/3 to my daughter, Sallie Byrd, 1/3 to my son Lee Hunter, 1/3 to my grandsons Joseph H. Allen and Thomas B. Allen, Junior."

His will also contained a residuary clause, which was modified by a codicil dated July 31, 1905. This codicil read:

"I give, devise and bequeath all the rest residue and remainder of my real and personal estate not hereinbefore disposed of that I may own at the time of my death wherever situated to my children— Sallie H. Byrd 1/5, Abram R. Hunter 1/5, Robert Lee Hunter 1/5, Jennie Houck 1/5 and Joseph Hunter Allen and Thomas B.

Allen, Jr. the sons of my daughter, Emma Allen, deceased, jointly 1/5.''

The will named Lee Hunter executor, with broad powers, he being authorized to pay debts and settle any unsettled business matters without waiting for any order of court whatsoever, quoting, in part: ''It being my purpose and will to invest him with all the powers I possess at this time in closing up my estate.'' All the devises in the will, i. e., the individual devises to his wife, all of his children and his grandsons, the Allen children, begin as does the devise to Jennie: ''I have heretofore conveyed by deed to . . .'' By a codicil Lee Hunter was substituted for Thomas B. Allen, Sr., as curator and trustee for the Allen children.

Lee Hunter testified in detail with respect to certain events transpiring subsequent to his father's death. The heirs, including the widow, met on September 24, 1911. Testator's papers were in a lock box at a bank, which witness and A. R. Byrd, father of plaintiffs, produced. In the box, among the other papers, were the will, which was read by Judge Thomas B. Allen, and the several deeds mentioned in said will. The heirs met the following day. The several deeds were delivered to the respective granteees and they took possession of their respective tracts of land. (Among said deeds from Joseph Hunter and wife were warranty deeds, dated April 16, 1903, conveying the fee: To Jennie Houck, covering among others, the land here involved. This is a deed plaintiffs seek, first, to void and, if unsuccessful, to reform. To Sallie H. Byrd, covering practically all the land devised to said grantee.) Witness also testified: Abram, who received considerably less than the others, stated he was not satisfied. After discussion, the heirs adjourned. [693] When they next met, Abram was represented by an attorney. It was agreed that Abram should receive one-fifth of the estate, equalizing his share with the others. At A. R. Byrd's suggestion they agreed to place a value on the property. They met again and arrived at a total value, real and personal, of $400,000; allocated as follows: Sallie Byrd, $85,000; Jennie Hunter, $87,500; Joseph H. and Thomas B. Allen, $89,500; Lee Hunter, $93,000. When they met to sign the papers, Louis B. Houck, husband of Jennie, announced she would not proceed until the entailment of the lands involved was released. According to witness, more argument followed; but an agreement dated December 9, 1911, finally resulted.

The record discloses an agreement, dated October 20, 1911, signed by Lee, Sallie, Abram, Jennie, and ''Joe and Tom Allen, by Thomas B. Allen, Sr.'' reciting that Abram was to receive $80,000 as his share, and that all property entailed under the will was to be released if possible.

The agreement of December 9, 1911, is in greater detail. It is signed: ''Lee Hunter, Joseph Hunter Allen and Thomas B. Allen, Jr.,

by Thomas B. Allen; Abram R. Hunter; Sallie Hunter Byrd; Virginia Hunter Houck; Emeline Hunter.'' After setting out the will it recites, among other things, an "intent, purpose and desire" to immediately effect distribution of all of testator's estate "as provided by said will and according to the true tenor, purpose and effect of said will, (except as herein expressly agreed to) and providing against any suit, contest or proceeding construing, contesting or questioning the validity of said will or any of its provisions or codicils;'' that Abram R. Hunter was "not satisfied with the terms of said will and has threatened to institute a suit to contest the validity of said will and to set the same aside and for the purpose of removing the entailments on the real estate of the undersigned, whose property was entailed under the above will.'' The parties declared they had full knowledge of the will and all the material facts involved and did "confirm, establish and sustain said will as the true and accepted will of said Joseph Hunter, deceased''; that they accepted the provisions thereof; that "each of the undersigned fully understands and intends that he and she is to be and is hereby estopped from instituting any suit or proceeding affecting the construction or contesting the validity of said will or any of its provisions or codicils''; and that each authorized Lee Hunter to perform his powers as executor, "deliver the several deeds to the several legatees, as provided in said will'' and distribute the assets. The fourth clause of said agreement read:

"Fourth. Each of the undersigned agree to convey or invest by appropriate legal proceedings or deeds all rights, title, interest, or claim he or she may have in and to the real estate devised to the several legatees in said will, it being the intent and purpose to annul and remove all the entailments to the real estate, as made and provided by said will and the deeds referred to and described in said will, and we and each of us hereby expressly waive, surrender and relinquish any and all rights and elections in law or equity which we or either of us may have in said will.'' They then "approve, ratify and confirm'' all acts of Lee Hunter as agent for Joseph Hunter, and accept as correct and true an annexed account. Then followed:

"It is understood that each agreement and undertaking on the part of each of the undersigned is in consideration of the agreements and understandings of the other parties to this instrument.''

Acting under said agreement, Lee Hunter was given authority to and did pay Abram on behalf of the others the following amounts: On behalf of Lee $12,520.13; Sallie, $5,150; Jennie, $7,650; "Joe and Tom Allen, by Thomas B. Allen,'' $9,650.

A general warranty deed bearing date of October 28, 1911, was executed and delivered by Robert Lee Hunter and wife, Emeline Hunter, Sallie Hunter Byrd and husband, and Abram R. Hunter

and wife, to Jennie Houck. This deed conveyed all the land here involved. Plaintiffs seek to set it aside.

All the deeds herein mentioned were filed for record on May 8, 1912.

Sallie H. Byrd died in 1919 or 1920.

Jennie Houck died January 11, 1937.

The litigants on both sides say that the devise in Joseph Hunter's will to Jennie Houck created a life estate in said Jennie, with contingent alternative or substitutional remainders, or remainders with a double aspect, in the heirs of said Jennie's body or, in the event Jennie died without issue, in Sallie Byrd, one-third; Lee Hunter, one-third; [694] and Joseph H. Allen and Thomas B. Allen, Jr., one-third.

Plaintiffs, asserting the deed of October 28, 1911, to Jennie Houck, in which Sallie Byrd and husband joined with other residuary devisees, was ineffective to destroy their interest, contend, absent said deed, that as Sallie, if living at the happening of the contingency, the death of Jennie without issue, would have taken, they, the lineal issue of Sallie, who predeceased Jennie, take, deed or no deed. They cite Barnitz v. Casey, 7 Cranch 456, 3 L. Ed. 403; Stockwell v. Stockwell, 262 Mo. 671, 673, 172 S. W. 23; Inlow v. Herren, 306 Mo. 42, 61[II], 267 S. W. 893, 898 [II]; Burford v. Aldridge, 165 Mo. 419, 63 S. W. 109. They say the remainder to Sallie was to an ascertained person and was not made contingent upon Sallie surviving Jennie. They argue that under Sec. 3496,[1] R. S. 1939 (Sec. 2870, R. S. 1909), the term "heirs" was not necessary to pass the fee to Sallie; that under Sec. 3498,[2] R. S. 1939 (Sec. 2872, R. S. 1909), a fee tail estate is converted into a life estate in the first taker, with remainder in fee simple to those who would at common law take at the happening of the contingency and that they, being the lineal issue of Sallie, the contingent remainderman, took under Sec. 3500,[3]

---

[1]"The term 'heirs,' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple, and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear, or be necessarily implied in the terms of the grant." Sec. 3496, R. S. 1939.

[2]"In cases where, by the common or statute law of England, any person might become seized in fee tail of any lands, by virtue of any devise, gift, grant or other conveyance, or by any other means whatever, such person, instead of being seized thereof in fee tail, shall be deemed and adjudged to be, and shall become, seized thereof for his natural life only; and the remainder shall pass in fee simple absolute to the person to whom the estate tail would, on the death of the first grantee, devisee, or donee in tail, first pass according to the course of the common law, by virtue of such devise, gift, grant or conveyance." Sec. 3498, R. S. 1939.

[3]"Where a remainder shall be limited to the heirs, or heirs of the body, of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heir or heirs of the body of such tenant for life shall be entitled to take as purchasers in fee simple, by virtue of the remainder so limited in them." Sec. 3500, R. S. 1939.

R. S. 1939 (Sec. 2874, R. S. 1909), on the death of Jennie without heirs of her body, the contingency. They conclude they take by purchase under the will of Joseph Hunter and not by descent from Sallie, their mother, construing said devise—"to my daughter, Sallie Byrd"—as being in legal effect: "to Sallie Byrd and the lineal .issue of her body so long as said lineal issue shall live." They cite Payne v. Payne, 119 Mo. 174, 177(1), 24 S. W. 781(1); Winget v. Gay, 325 Mo. 368, 373, 28 S. W. (2d) 999, 1000[5]; Stockwell v. Stockwell, supra; Inlow v. Herren, supra.

Defendants say that plaintiffs, children of Sallie Byrd, take neither by descent nor purchase any interest in the contingent remainder devised to Sallie Byrd; and that Sallie Byrd having predeceased Jennie Houck, her contingent remainder lapsed and passed under the residuary clause of the will and under the deed of the residuary devisees to Jennie Houck. They argue that plaintiffs, not being included in the devise in question, cannot take under the will by purchase with the aid of the statutes, and that it is the nature of a contingent remainder to be not descendible. They cite, among others, Lewis v. Lewis, 345 Mo. 816, 825 et seq., 136 S. W. (2d) 66, 70, et seq., and cases there cited; Re Coot's Estate, 253 Mich. 208, 234 N. W. 141 (certiorari denied, 284 U. S. 665, 76 L. Ed. 563; 52 S. Ct. 42).

The view we take of the case obviates any necessity of a discussion of what has been written on whether a given contingent remainder is descendible, devisable, or alienable; which, according to our view, depends on the particular language employed in creating the estate and the intent of the grantor. Consult 2 Fearn on Remainders (4th Am. Ed.), 434; 4 Kent's Commentaries (14th Ed.), *261; 2 Washburn, Real Property (6th Ed.), p. 527; 31 C. J. S., p. 101, Sec. 88, c.; 33 Am. Jur., p. 618, Sec. 152, p. 614, Sec. 149, p. 611, Sec. 148; 16 Am. Jur., p. 794, Secs. 27, 29. It is not for us to interpolate words in Joseph Hunter's will. Stolle v. Stolle (Mo.), 66 S. W. (2d) 912, 917; Ringquist v. Young, 112 Mo. 25, 34, 20 S. W. 159, 161; Bernero v. St. Louis Union Trs. Co., 287 Mo. 602, 624, 230 S. [695] W. 620, 624[2]. The draftsman of the paragraph under discussion knew as readily how to include the "lineal issue" of Sallie Byrd as the heirs of the body of Jennie Houck. Section 3496, R. S. 1939, makes the word "heirs" unnecessary to the grant of a fee. It does not interpolate words not used into the grant.

Plaintiffs do not take as purchasers under the will of Joseph Hunter. "The words 'purchase' and 'descent' are employed to designate the only two methods of acquiring title to real property . . . ; but they are readily distinguished as each is the opposite of the other, title by descent being acquired by mere operation of law and title by purchase being acquired by act or agreement of the parties, or, as frequently stated, by any means other than descent." 26 C. J. S., p. 991, n. 16. There is no limitation whatever as to them

specifically or as a class in the devise. They do not take from the devisor. Had said devise read "to Sallie Byrd and the lineal issue of her body so long as said lineal issue shall live," as plaintiffs would have us read it, a different legal situation might well result and what is said in plaintiffs' brief might be applicable. 31 C. J. S., p. 35, Sec. 21, defines "a 'fee tail' or 'estate tail'" as "an estate of inheritance which, instead of descending to heirs generally, goes only to heirs of the donee's body." See Inlow v. Herren, 306 Mo. 42, 65, 267 S. W. 893, 899[10]; 19 Am. Jur., p. 507, Sec. 47. The provisions of Secs. 3498 and 3500, R. S. 1939, which treat of estates in "fee tail" and remainders "limited to the heirs or heirs of the body, of a person to whom a life estate in the same premises shall be given," respectively, are not applicable to the devise to Sallie because she did not "become seized in fee tail"; nor was she "the person to whom the estate tail would, on the death of the first . . . devisee .. . . in tail, first pass according to the course of the common law . .. ."; nor was she "a person to whom a life estate" was devised. The instant devise involved an estate tail as to Jennie and the heirs of her body (converted into a statutory life estate in Jennie with remainder in fee simple in those classifying as heirs of her body by Sec. 3498, supra); but an alternative or substitutional remainder in fee simple as to Sallie. Plaintiffs' authorities are distinguishable on the facts.

■ Since plaintiffs do not take as purchasers, let us assume that the estate devised to Sallie Byrd was descendible and plaintiffs might take under our statutes of descents and distributions that portion of the estate "undisposed of" (Sec. 306, R. S. 1939) by their mother. The record does not establish whether Sallie Byrd died testate or intestate. She and her husband joined with Lee Hunter and his wife, Abram R. Hunter and his wife, and Emeline Hunter, the widow, in the general warranty deed conveying the lands involved to Jennie Houck bearing date of October 28, 1911, and recorded May 8, 1912. If Sallie Byrd's interest in the lands was descendible, her interest also was alienable and devisable, as Joseph Hunter's will placed no restriction with respect to either incident upon his devise to Sallie.

■ The foregoing disposes of the case, plaintiffs taking, if at all, by descent and being in no better position than Sallie Byrd to attack the agreement between the residuary devisees and the resultant deed to Jennie Houck. They charge said deed was the result of a conspiracy to defraud plaintiffs and illegal, and devote much space thereto. The attack, as developed, goes on the theory the fraud was perpetrated on them as contingent remaindermen by purchase under the will of Joseph Hunter and not on the theory the fraud was perpetrated on their mother. The record, undisputed, established that she understood fully what she was about and that a sufficient consideration to sustain the agreement and deed passed from Jennie, as well as

other residuary devisees. Statements are in plaintiffs' brief indicating an attack on Joseph Hunter's will might have been successful. There is no showing a will contest would have been futile. There was evidence establishing the signatures of Sallie Byrd and her husband to the agreement and the deed, the latter being acknowledged by them. Plaintiffs had the burden of going forward with the evidence. Our statement outlines the more material facts connected with the transaction. After studying the entire record we find nothing that would justify our overturning the finding nisi on the issue and re-establishing the status of the parties thereto prior to the execution of the agreement and deeds. If plaintiffs take by descent, such steps are essential to their success in this litigation. This does not give consideration to defendants' main contentions.

Plaintiffs' contention that Jennie Houck sought to take under the will of Joseph Hunter and at the same time renounce the will is without merit. The defense is that defendants rightly acquired and hold title through the will and the subsequent muniments in their chain of title.

The deed of April 16, 1903, from Joseph Hunter and wife to Jennie Houck, conveying the fee, was never delivered by Joseph Hunter. As defendants are not claiming under said deed but under Joseph Hunter's will, the validity or invalidity of said deed is of no practical consequence here.

Plaintiffs recognize they must take as purchasers under "paragraph 4" of Joseph Hunter's will to prevail and not by descent from Sallie Byrd, their mother. We have pointed out they do not take as purchasers under said will. Any right to take by descent through their mother was extinguished by the warranty deed to Jennie Houck in which their mother and her husband joined. This is true whether the interest passing under the mother's deed came to her under "paragraph 4" or under the "residuary clause" of testator's will.

The judgment is affirmed. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.