ARTHUR TAPLEY, WILLIAM J. TAPLEY, ENOCH A. TAPLEY, ETTA DOWELL, WILLIE T. TAPLEY, VOLNEY B. TAPLEY, ELSIE CONRAD, EDNA BARNARD, JESSIE B. TAPLEY, ARTHUR D. TAPLEY and ELMER TAPLEY, Plaintiffs, v. CAROLINE M. DILL, (Defendant) Respondent, MARY H. TAPLEY, (Defendant) Appellant, JENNIE JACKSON, MYRTLE HARWELL, ANNIE IRVINE, CORINNE MODRALL, FRANK SAWELL, AMYE JOHNSON GUYTHER, HAROLD JOHNSON, BESSIE JOHNSON BOWLES, WHARTON JOHNSON, FRED A. JOHNSON, JR., NORMAN JOHNSON, HAROLD K. JOHNSON, ELEANOR LABEAUME GORWOOD, ANNIE WRIGHT MARIALL, CHARLOTTE KILCHRISTE, RUTH ASKEW, HENRY WRIGHT, GUS WRIGHT, LONNIE MCKEE AND VIRGINIA MITCHELL, Defendants.—No. 40421.—217 S. W. (2d) 369.

Division Two, February 14, 1949.

*Robert L. Motley* and *Roy Hamlin* for appellant.

*Rendlen, White & Rendlen* and *D. M. Stout* for certain defendants-respondents; *Carstarphen & Harvey* for plaintiffs-respondents.

826

[370] BOHLING, C.—Arthur Tapley and other collateral heirs of Valentine Tapley instituted this action against Mary H. Tapley, Caroline M. Dill and others to quiet and determine title to approximately 580 acres of land in Pike county, Missouri, and for partition. A change of venue was taken to the Ralls county circuit court. At the time the suit was instituted plaintiffs had information Caroline M. Dill was dead. After a trial to the court without a jury, the title was adjudged in Caroline M. Dill as sole owner in fee. Mary H. Tapley prosecutes this appeal. The case pivots upon the provisions of two active testamentary trusts created by Valentine Tapley, the common source of title. The material facts follow:

Valentine Tapley died in April, 1910. His son, Joe Tapley, and three grandchildren, to wit: Caroline M. Dill, Harry R. Mitchell and Mary R. Mitchell, children of his deceased daughter Rebecca Tapley Mitchell, survived him. He bequeathed and devised one-half of his estate, real and personal, to his son. He bequeathed to his grand-

daughter Caroline M. Dill (designated Caroline R. Dill in his will) $100. The next two paragraphs of his will are here involved. Each created a trust estate in one-fourth of his estate, real and personal, less $50 (one-half of the bequest to Caroline M. Dill), in Joe Tapley, as trustee, for the benefit of Harry R. Mitchell and Mary R. Mitchell, respectively, for life and then to their respective bodily heirs or, if none, to his son, Joe Tapley, viz.:

"IV. I hereby will and bequeath to my son Joe Tapley, as trustee, in trust for the use and benefit of my grandson Harry R. Mitchell, a son of my deceased daughter Rebecca Tapley Mitchell, and his bodily heirs one-fourth (¼) of all my estate, both real and personal, less the sum of fifty dollars, that being one-half of the amount I have given my granddaughter Caroline R. Dill, in paragraph number three, and I direct that my said son Joe Tapley pay to my said grandson Harry R. Mitchell the net annual rents derived from the real estate and the net annual interest derived from the personal property to my said grandson Harry R. Mitchell, each year during his natural life and should the said Harry R. Mitchell die without leaving bodily heirs, the trust estate hereby created shall become a part of the trust estate of my granddaughter Mary R. Mitchell, formerly Mary R. Tapley, a daughter of my deceased daughter Rebecca Tapley Mitchell, as hereinafter created subject to all the conditions of said trust estate and in case at that time [371] the said Mary R. Mitchell should be dead then the trust estate shall go to and become the property of my son Joe Tapley.

"V. I hereby will and bequeath to my son Joe Tapley, as trustee, in trust for the use and benefit of my granddaughter Mary R. Mitchell, formerly Mary R. Tapley, a daughter of my deceased daughter Rebecca Tapley Mitchell, and her bodily heirs one-fourth (¼) of my estate, both real and personal, less the sum of fifty dollars, being one-half of the amount I have bequeathed to my granddaughter Caroline R. Dill as mentioned in paragraph number three, and I will and direct that the net annual rents derived from the real estate and the net annual interest derived from the personal property shall be paid to my said granddaughter Mary R. Mitchell each and every year during her natural life and should the said Mary R. Mitchell die without leaving bodily heirs said trust estate shall become a part of the trust estate of my grandson Harry R. Mitchell subject to all the terms and conditions of said trust estate of said Harry R. Mitchell and in case at that time the said Harry R. Mitchell should be dead then the trust estate shall go to and become the property of my son Joe Tapley."

Testator also directed Joe Tapley to take specific real estate at a value of $11,150.75 as part of the property given to him, and specific real estate as testamentary trustee for each of the testamentary trusts quoted supra and placed a value on each of $6,000. The will did not have a residuary clause.

Joe Tapley died June 28, 1915, without descendants and testate. He bequeathed and devised his estate, real and personal, to his widow, Mary H. Tapley, appellant here. Mary H. Tapley was appointed successor trustee and administered the trust estates.

Mary R. Mitchell died July 5, 1921, without bodily heirs and intestate.

Harry R. Mitchell died November 10, 1944, without bodily heirs and intestate.

The judgment and decree was for Caroline M. Dill "as the sole and only heir at law of her deceased grandfather, the said Valentine Tapley." This holding was upon the theory the will failed to dispose of the whole of testator's fee simple estate and the land was intestate property. If so, the residuum, be it considered in the nature of a reversion or a resulting trust, at testator's death passed to his heirs according to the law of descents and distributions uninfluenced by his will; and a one-half interest vested in his son, Joe Tapley, and the other half interest vested in the three grandchildren of his deceased daughter, Rebecca, to wit, a one-sixth interest each in Harry, Mary and Caroline. Sec. 306, R. S. 1939, Mo. R. S. A.[1] Joe Tapley's one-half interest passed at his death by his will to his widow, Mary H. Tapley, appellant here. 31 C. J. S. 128, Sec. 108; 33 Am. Jur. 669, Sec. 195. Caroline M. Dill is not entitled to the whole of said lands as intestate property.

We interpret the testamentary trusts, stressing paragraph IV of Valentine Tapley's will which ultimately controls. Paragraph V is to like legal effect. The devise to Harry R. Mitchell and his bodily heirs constituted an equitable estate tail, subject to like principles as legal estates tail (Wood v. Kice, 103 Mo. 329, 333, 15 S. W. 623, 624; 54 Am. Jur. 94, Sec. 103; 33 Am. Jur. 463, Secs. 4, 215); that is, at common law, to Harry and his bodily heirs for their respective natural lives so long as his posterity endured in regular course of descent, and on failure of such posterity the estate would determine and revert.[2] Under Sec. 3498, R. S. 1939, Mo. R. S. A., this estate was converted into an equitable life estate in Harry and a remainder in

[1] Consult 26 C. J. S. 1008, Secs. 8, 18; 16 Am. Jur. 791, Secs. 24, 28; Mattingly v. Washburn, 355 Mo. 471, 196 S. W. 2d 624; Davidson v. Davidson, 350 Mo. 639, 646, 167 S. W. 2d 641, 645; Davis v. Austin, 348 Mo. 1094, 1100, 156 S. W. 2d 903, 905; and as to trusts Schmucker's Estate v. Reel, 61 Mo. 592, 600; Jones v. Patterson, 271 Mo. 1, 9, 195 S. W. 1004, 1006; Wentura v. Kinnerk, 319 Mo. 1068, 1077, 5 S. W. 2d 66, 69; Gloucester v. Wood, 67 Eng. Rep. 326, 3 Hare 131.

[2] 31 C. J. S. 35, Sec. 21 et seq.; 19 Am. Jur. 507, Sec. 47 et seq.; Inlow v. Herren, 306 Mo. 42, 65, 267 S. W. 893, 899 [10]; Davidson v. Davidson, 350 Mo. 639, 642, 167 S. W. 2d 641, 642; Stat. West. II, 13 Edw. I, c, 1; Taltarum's case (1473), Y. B. 12 Edw. IV, 14, 19; 2 Blackstone *109 et seq.; 2 Minor's Institutes 77 et seq.; 1 Coke on Littleton (19th Ed. 1853), 19 a et seq.

fee to the heirs of his body, if any. This remainder was a [372] contingent remainder, the uncertainty existing with respect to the person or persons, if any, qualifying to take. Wood v. Kice, supra; Williams v. Reid (Mo.), 37 S. W. 2d 537, 539; Mattingly v. Washburn, 355 Mo. 471, 476, 196 S. W. 2d 624, 626, and authorities cited. (See Sec. 3500, R. S. 1939, Mo. R. S. A.)

. The trust estate was to terminate upon the death of the survivor of Mary and Harry, without any duty imposed upon the trustee to transmit title. Following Harry's life interest, testator provided several alternative substitutional future interests, viz.: First, the fee was to vest in Harry's bodily heirs. Second, if Harry died without heirs of his body, the trust estate should become a part of the trust estate under paragraph V if Mary survived Harry. Third, if Mary be dead at Harry's death without bodily heirs, the property was to pass to testator's son, Joe Tapley. Mary died without bodily heirs, predeceasing Harry, and the future interests thereupon were: first, to the heirs of the body of Harry, or, second, if none, to Joe.

What was the effect of Joe surviving testator and predeceasing Mary and Harry upon the devise to him? We understand appellant contends testator devised a vested remainder to Joe, a conditional fee defeasible on Harry's death with bodily heirs, and an executory devise to Harry's bodily heirs expectant; stressing cases in the footnote.[3] They did not involve an estate tail with an alternative substitutional future interest. Respondent says testator devised a contingent remainder to his son, Joe, and: "A contingent remainderman cannot pass any title to anyone unless such contingent remainderman survives the life tenant" (citing cases hereinafter mentioned).

Joe Tapley, upon testator's death, took an alternative or substitutional contingent remainder, a remainder following the contingent remainder of a fee tail and subject to conditions precedent.[4] The authorities, as we read them, differ whether a remainder following a contingent remainder in fee may constitute a vested or contingent future interest.[5] It has been observed that most of the cases holding a future interest after a contingent remainder in fee to be a vested

[3]Hull v. Calvert, 286 Mo. 163, 226 S. W. 553, 555; Deacon v. St. Louis Union Trs. Co., 271 Mo. 669, 197 S. W. 261, 266; First Presbyterian Church v. Lynott (Mo.), 78 S. W. 2d 396, 402; Dunbar v. Sims, 283 Mo. 356, 222 S. W. 838.

[4]Norman v. Horton, 344 Mo. 290, 126 S. W. 2d 187, 190[6]; Wiggins v. Perry (Mo.), 271 S. W. 815, 826(IV); 31 C. J. S. 93, Sec. 75; 33 Am. Jur. 542, Secs. 85, 148; Restatement, Property, Secs. 278, 157; Simes, Future Interests, Sec. 79; 1 Fearne, Remainders, 225, 373; 2 Fearne, Id., Secs. 192-195; 1 Mo. B. L. 26, 33.

[5]Simes, Future Interests (1936), Sec. 75; Fearne, Remainders, *225; Kales, Estates, Future Interests (2d Ed.), Secs. 95, 306; Gray, Rule against Perpetuities (4th Ed.), Sec. 113.1; 2 Tiffany, Real Property (3rd Ed.), Sec. 333; 4 Thompson, Real Property (1940), Sec. 2223.

interest involved a residuary devise and held such devise passed the reversion.[6] Missouri cases hold a residuary devise passes testator's reversion. Lankford v. Lankford, 348 Mo. 1170, 159 S. W. 2d 265; Hobbs v. Yeager (Mo.), 263 S. W. 225, 227; Davis v. Austin, 348 Mo. 1094, 1100, 156 S. W. 2d 903, 905.

The word "vested" is used in different senses in the discussions of future interests. Mention has been made of "a vested contingent" future interest, meaning it was alienable, devisable and descendible. Lankford case, supra; Hyde v. Hopkins, 317 Mo. 587, 593, 296 S. W. 382, 385[7]. Consult Simes, Future Interests, Secs. 59, 64 et seq. We have held contingent remainders alienable (Grimes v. Rush, 355 Mo. 573, 197 S. W. 2d 310, and authorities cited); the effectiveness of an alienation, devise or descent of a given contingent remainder depending on the particular language used in its creation and the intention of the grantor (Byrd v. Allen, 351 Mo. 99, 109, 171 S. W. 2d 691, 694[1]).

The real issue is whether survivorship of the particular estate was a condition precedent [373] to Joe Tapley's estate. Cases have considered contingent remainders subject to an implied condition of the donee surviving the particular estate although not so conditioned, seemingly because subject to a condition precedent. This is not logically sound where the contingency refers to the time of enjoyment and possession and not to the time for the title to pass or for the determination of the person taking.

The transfer of a remainder explicitly or necessarily conditioned upon the donee surviving the contingency is of no effect when said donee fails to meet said condition precedent by death prior to the contingency. Such are respondent's cases. In Dickerson v. Dickerson, 211 Mo. 483, 488, 110 S. W. 700, 702, the devise read: "and at her death said farm to be equally divided between my surviving children." In Eckle v. Ryland, 256 Mo. 424, 445, 450, 165 S. W. 1035, 1040, 1042 [9], the title was to pass out of the trustee and vest upon the death of the survivor of the beneficiary or the settlor in the named beneficiaries "or to their heirs should they or either of them be dead." Again, in Norman v. Horton, 344 Mo. 290, 126 S. W. 2d 187, 192, a deed provided that it was "the title to the above described real estate" that passed at the death of the life tenant of an estate tail without bodily heirs and not the mere possession.

Other cases are to like effect, depending on the wording of the grant: La Vaulx v. McDonald (Mo.), 190 S. W. 604; Tevis v. Tevis, 259 Mo. 19, 167 S. W. 1003, 1008; Becker v. Anchor R. & Inv. Co., 71 F. 2d 355, 357; and cases cited in Gardner v. Vanlandingham, 334 Mo. 1054, 1064, 69 S. W. 2d 947, 951. The Tevis case involved a devise to son N for the life of son J upon condition N pay J $288 annually, with an op-

---

[6]Simes, supra, Sec. 75, n. 48, also Sec. 55; Egerton v. Massey, 140 Eng. Rep. 771, 3 C. B. (N. S.) 338.

tion in N to purchase at J's death for $2400, and the land or the money, as the case might be, was to "vest in the heirs of the body of" J, "and if there shall be no heirs of his body then living, the money or . . . . the land shall pass to and vest in" testator's heirs at law. Eckle v. Ryland, supra, written a couple of months prior by the same author, was followed, without discussing or developing the issue, in holding the will of an "heir" of testator who predeceased J was ineffective on the theory the persons who were to take "could not be determined until" J's death without heirs of his body. Consult 14 Mo. B. L. 13; 9 Mo. L..R. 110. The Tevis case is not a holding that a contingent remainder to an ascertained person (as in the instant case) is not alienable, devisable or descendible where his survivorship is not made a condition to his estate. Adverbs of time in grants creating remainders are construed, absent a contrary intention, to relate to the commencement of the remainderman's enjoyment and possession of and not the vesting of his title to the property. Gardner v. Vanlandingham, supra l.c.s 1067, 953, respectively.

Testator did not condition Joe Tapley's estate upon his surviving the survivor of the life beneficiaries. Joe's estate was conditioned upon Mary's death without heirs of her body prior to Harry's death and Harry's death without heirs of his body. Expressly conditioning the trust estates to the "heirs of the body" of the respective life beneficiaries and the passing of the trust estate created by paragraph IV to that existing under paragraph V upon Mary surviving the death of Harry without bodily heirs and the passing of the trust estate created by paragraph V to that existing under paragraph IV upon Harry surviving Mary's death without heirs of her body and testator's failure to condition Joe's estate under paragraphs IV or V upon his surviving either Mary or Harry demonstrates that Joe's survival of the particular estate was designedly not made a condition to his rights under testator's will. The death of Mary without heirs of her body and the death of Harry without heirs of his body caused the prior testamentary contingent remainders to the "heirs of the body" of the respective life beneficiaries to fall in and the alternative contingent remainder to Joe to become a vested estate in Joe, if living, and, if not living, in his heirs or assigns. Joe Tapley's will devised his interests in this real estate to Mary H. Tapley, his widow, appellant here. Byrd v. Allen, 351 Mo. 99, [374] 109[1, 3], 171 S. W. 2d 691, 694[1, 7]; Grimes v. Rush, 355 Mo. 573, 197 S. W. 2d 310; Perry v. Bulkey, 82 Conn. 158, 72 A. 1014, 1019; Hammond v. Piper (Md.), 44 A. 2d 756, 759[4]; 31 C. J. S. 101, Sec. 88c; 26 C. J. S. 1023, Sec. 18; 68 C. J. 498, Sec. 114; 33 Am. Jur. 615, Secs. 150, 152, 153; 16 Am. Jur. 794, Secs. 27, 29; Restatement, Property, Secs. 162, 164, 165; Simes, Future Interests, Secs. 65, 94, 362, 712, 713, 723, 731; Kales, Estates, Future Interests, Secs. 324, 325, 351, 352; 1 Fearne, Remainders, 366-371, 551; 2 Tiffany, Real Property, Sec. 341; 4 Thompson, Real Property, Secs. 2211, 2230, 2231; 29 Mich. L. Rev.

954; 15 Mich. L. Rev. 175; 14 Mo. B. L. 6 et seq.; 9 Mo. L. R. 107. The result in this case would have been the same had testator devised a defeasible vested remainder or his reversion to Joe.

Another ground exists for the holding. Of prime importance in the construction of wills is the intention of the testator, to which technical rules of construction yield, unless some established rule of law be violated. Eckle v. Ryland, 256 Mo. 424, 440, 165 S. W. 1035, 1038; St. Louis Union Trs. Co. v. Kelley, 355 Mo. 924, 199 S. W. (2d) 344, 349[1]; Bates v. Bates, 343 Mo. 1013, 124 S. W. 2d 1117, 1119. After giving his son, Joe, one-half of his estate and his granddaughter Caroline $100 and creating the two testamentary trusts hereinbefore discussed, testator stated he had given Joe property valued at $500 and Joe was not to be charged therewith; also that he held Joe's notes aggregating over $3,500 and drawing annual interest of six and eight per centum, and that while Joe was to pay the principal he was not to be charged with the interest. Testator said: "One of the reasons is that from time to time he [Joe] has rendered me great assistance for which he has not asked nor have I paid him any compensation and this is made in partial satisfaction thereof." Testator also directed that Joe be permitted to serve as trustee without giving bond and empowered him to sell and convey any of the lands coming within the trust estate the same as testator, if living, might sell and convey, requiring him to account for and reinvest such proceeds. He appointed Joe executor of his will and requested that he not be required to give bond and authorized him to compromise any obligations due testator and accept a less sum than actually due according to his best judgment. To the foregoing may be added the observations in the preceding paragraph respecting paragraphs IV and V of testator's will.

Taking the will within its four corners and aided by applicable rules of construction it is evident, we think, that testator desired Joe to have half of his estate outright and that his grandchildren Harry and Mary should have the use and benefit of the other half (less that given to his granddaughter Caroline) for their natural lives; and the corpus of said trust estates should vest in the heirs of the body of said respective life beneficiaries or of their survivor if there be any such heirs of the body, and if not testator intended that his son, Joe, take the whole of his estate, except that given to his granddaughter Caroline. He accomplished this by the provisions of paragraphs IV and V of his will when interpreted according to law and also when his will is construed as a whole.

Accordingly, the judgment is reversed and the cause remanded with directions to adjudge the title to the real estate involved in Mary H. Tapley, appellant. Westhues and Barrett, CC., concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.