295 S.W.2d 581 (1956)
In re TRUST ESTATE of John J. YEATER.
John Y. BROCKMEYER, Successor Trustee, Respondent,
v.
Jeanette B. HANNAN, Frances Y. Landrum, Christine Y. Pearce and Claire Y. Bowser, Defendants,
Frances Y. Landrum, Christine Y. Pearce and Claire Y. Bowser, Appellants.
No. 22438.
Kansas City Court of Appeals, Missouri.
October 4, 1956.
*582 Lamm & Barnett, Sedalia, for appellants.
John T. Martin, W. K. Gibson, Sedalia, for respondent.
DEW, Presiding Judge.
The respondent brought this action to determine the interests of the parties in a testamentary trust estate under the will of John J. Yeater, deceased; to construe the effect of an instrument executed by two surviving sons of the testator, purporting to be an assignment to respondent and defendant Jeanette B. Hannan by which, it is claimed, title to the whole of the remaining trust property became vested in them. The petition further asks for allowance of reasonable attorneys' fees out of the trust estate; a commission to respondent for services as trustee, and for an order of discharge upon the distribution to respondent and Jeanette B. Hannan of the trust estate in accordance with the final accounting filed and submitted. The Court found the final accounting to be correct, with certain amendments, ordered the trust terminated and distributed in accordance with the decree, found the respondent and his sister, defendant Jeanette B. Hannan, to have acquired in equal shares all the remaining assets of the trust under the assignment by the two sons of the testator John J. Yeater, and found that the appellants had no interest in the trust estate. The decree included authority to pay respondent's traveling expenses of $27.15. Defendants Frances Y. Landrum, Christine Y. Pearce and Claire Y. Bowser have appealed.
The salient facts are not controverted. John J. Yeater, an attorney by profession, resident of Pettis County, Missouri, died *583 testate on March 25, 1909. He left surviving him his wife Sarah Yeater, his sons Charles E. and Merritt Yeater, his daughters Laura K. Yeater and Stella Y. Brockmeyer. His last will and testament left to his widow all of his estate for and during her natural life. The will provided that at her death the estate was to be distributed in four equal parts as follows: One-fourth to the son Charles E. Yeater, one-fourth to the son Merritt Yeater, and one-fourth to each of them in trust for the daughter Laura J. Yeater and the daughter Stella Y. Brockmeyer. The administration of the estate of John J. Yeater was duly had and completed. For reference to the will in its entirety, it is set out below in full, omitting formal introductory and closing paragraphs:
"2. I give, devise and bequeath to my beloved with Sarah J. Yeater for and during her natural life all of my property real and personal of every kind whatsoever, together with all rents and profits accruing from the same, should she survive me.
"3. I give, devise and bequeath all of my said estate together with the accumulated rents and profits thereof, after the termination of the life estate above provided in four equal parts, one part each to my two sons Merritt Yeater and Charles E. Yeater, and one part each in trust as hereinafter provided to my two daughters Laura J. Yeater and Stella Brockmeyer, and if I should survive my said wife, and there should be no life estate to her, I give, devise and bequeath all my estate direct to my children as aforesaid provided.
"4. I hereby invest in my sons, Merritt Yeater and Charles E. Yeater as trustees the title to the interest conveyed by this Will to my said two daughters with the full power of sale, disposition and management thereof by said Trustees in their judgment and discretion, and the said Trustees at reasonable intervals each year shall pay to my said daughters the net income thereof. The object of these provisions of my Will is to put the management of my two daughters' interests in my estate in the hands of my two sons as better qualified to manage the same from their business experience, and because I believe and trust that as a matter of duty and affection they will carefully guard the interests of their sisters. It is my will that this trust shall be constituted so as to create a support for my two daughters free as far as possible from the vicissitudes of human life, and free from all liability from their debts or obligations of any kind whatsoever at any time. To this end I will and direct that my two said daughters shall have no power to hypothecate, anticipate, dispose of, incumber or in any way alienate or impair said income or any part of said trust estate, nor shall they have any interest therein which can be disposed of, but the same shall be vested entirely in my two sons as said trustees, and I rely fully upon their honor, judgment and discretion to have the sole management of said trust estate. Upon the death of either of my said daughters, her interest shall pass to the heirs of her body on the attainment of their respective majorities and shall not vest until then, and should she have no such heirs, to her sister and brothers and their heirs.
"5. I nominate my two sons Merritt Yeater and Charles E. Yeater as the Executors of this my Last Will and Testament, and it is my will that they shall not be required to give bond, either as such Executors or as Trustees as aforesaid.
"6. I give to my said Executors the full right, authority and power to sell or dispose of at any time during the administration of my estate, any property thereof, whether real estate or *584 personal property, on such terms and for such price as seems best to them without any application to the Probate Court, and without the approval of such Court.
"7. If either one of my said children shall be dead at my death, then the share which such child would have received if living, I desire to pass to his or her descendants, per sterpes, but if any of my said children shall be dead at my death leaving no descendants, then I desire that the interest devised and bequeathed to such child shall pass to my remaining surviving children, provided that any interest passing to either of my daughters shall be in trust as above provided."
Sarah J. Yeater, widow of deceased testator, died in 1921. The two sons Charles and Merritt thereupon received their two-fourths interest of the estate then on hand, and took charge as trustees of the two-fourths interest of the two sisters in accordance with the will. The trust property now in question consists of personalty, composed of $717.36 in cash and 42 shares of common stock in the American Telephone and Telegraph Company, of the market value of $7,560, as of the time of trial. The value of the fractional interests claimed by the appellants in the remaining trust estate is concededly less than $5,000.
Stella Y. Brockmeyer (daughter of the testator) died in 1934, leaving two children, the respondent and defendant Jeanette Brockmeyer Hannan, heirs of her body. Thereafter, in due time, they received their mother's one-fourth interest from the corpus of the trust. On April 12, 1934, Charles E. Yeater and his brother Merritt Yeater, (sons of the testator), executed and delivered the following instrument:
 "Sedalia, Missouri,
 April 12th, 1934.
"In consideration of One ($1.00) Dollar and other valuable considerations, we hereby sell and assign to John Y. Brockmeyer and Jeanette Brockmeyer of St. Louis, Missouri, all the interest which we, or either of us, may now have or may hereafter acquire as heirs at law or devisees of our sister, Laura Yeater, in four shares of the cumulative preferred stock of the Southwestern Bell Telephone Company, evidenced by certificate No. SO48680 and 33 shares of stock of the American Telephone & Telegraph Company, evidenced by Certificate N60008, and One Thousand Dollar Bond of the Federal Land Bank of New Orleans, Louisiana, numbered M120,230, all of which property is now held by the undersigned as trustees under the will of John J. Yeater, deceased in trust for Laura Yeater during her life time and at her death to be turned over to the heirs at law of John J. Yeater.
 (Signed) Merritt Yeater
 (Signed) Charles E. Yeater.
"Witness:
 (Signed) Geo. J. Lass."
Charles E. Yeater died in 1943, leaving as his surviving children appellants Frances Y. Landrum and Christine Y. Pearce, and also a grandchild, appellant Claire Y. Bowser, sole and only child of a deceased son of Charles, named Lawrence K. Yeater. Thereupon, Merritt Yeater, remaining son of the testator, continued as sole trustee of the trust for his sister Laura J. Yeater. In 1951, Merritt Yeater died, without children or grandchildren. Thereupon, respondent succeeded him as successor trustee of the trust estate for Laura J. Yeater, and continued the administration of the same until her death in 1954. She left no children or descendants or any heirs of her body.
It is the contention of the respondent that by reason of the assignment heretofore quoted, executed in 1934, in favor of himself and his sister, defendant Jeanette B. Hannan, by Merritt and Charles E. Yeater, and by reason of the further fact that he and his sister are the bodily heirs of the *585 deceased Stella Y. Brockmeyer, they are entitled absolutely to all of the remainder of the Laura Yeater trust estate, and that the remaining defendants have no interest therein.
In particular, respondent urges that in the closing clause of Paragraph 4 of the will relating to the disposition of the Laura trust upon her death, "to her sister and brothers and their heirs", the words "and their heirs" are mere words of limitation and not of purchase, and are intended merely to define the vested nature of the contingent interests of her "sister and brothers" bequeathed by the will, and are not intended to constitute and to specify the surviving heirs of the brothers and sister of Laura as a group to take as remaindermen in the place and stead of any of Laura's brothers or sister who may not have survived her. It is claimed that the clause speaks as of the date of the death of the testator. It is contended that the proper interpretation of the will is that at the time of the testator's death "as to the share in which Laura was given a life interest, alternative or substitutional, contingent remainder interests were then taken by her sister and brothers, subject to defeat or divestment only in the event Laura died without bodily heirs". It is thus argued that since Laura died without bodily heirs, the contingency "fell in", and the contingent remainder interests of "her sister and brothers" became absolute in them, if living, and if not living, then in their heirs and assigns. Such interests, they assert, were meanwhile alienable by assignment, and, in fact, had been assigned to respondent and his sister Jeanette in 1934 by the assignment quoted. Respondent insists there is no justification in the will for the defeat of the contingent remainder interests in Charles and Merritt Yeater simply because Laura survived them and her sister Stella; that the only defeasible contingency was the possibility of Laura leaving bodily heirs. Respondent submits that the words "shall not vest until then" refer only to the vesting of title in Laura's bodily heirs, if any, when they reached their majorities, and not intended to fix the time of vesting in the contingent remaindermen.
The appellants maintain that the provisions of the will of John J. Yeater are determinative of the issues involved and must prevail; that the intention must be the guiding star in the search for the meaning and effect of his will; that he plainly intended "his blood to take at the death of his daughter"; that no legal title to any interest in the trust created for Laura Yeater ever passed from the trustees until her death, and that, because she died without "heirs of her body", the legal title thereto then, and not until then, vested, as the will provided, in her sister and brothers and their heirs, of whom appellants are three of such surviving "heirs" and respondent and his sister defendant Jeanette Hannan, are the remaining two. They insist that the words "and their heirs" were meant to be words of purchase, designating a group to take instead of and for any of Laura's deceased brothers or sister. Accordingly, appellants claim that respondent and Jeanette have acquired no additional right in Laura Yeater's trust property by the assignment to them by Charles and Merritt Yeater in 1934, whose interests at that time were not vested remainders, but mere "possible" or contingent equitable interests absolutely defeasible by the death of the assignors prior to the death of Laura herself; that since Laura outlived both the assignors, the assignment became wholly ineffective. Appellants assert that whatever interests respondent and Jeanette have came to them through the will of John J. Yeater, as do the interests of the appellants, and not through the purported assignment by Charles and Merritt made twenty years before Laura died.
Appellants concede that the assignment was not void. They admit that had Charles and Merritt outlived Laura, their assignment of their equitable contingent interests would, after her death, cause such interests to vest in respondent and Jeanette an absolute title in the trust property left in *586 the Laura trust, she leaving no bodily heirs, but which interests, they claim, were defeated and destroyed by the death of both before the death of Laura. All the parties concede that there is no precedent for the exact use of the disputed words and context as they appear in the quoted will.
The parties have supplied us with an exhaustive exposition of the subject of contingent remainders in property, distinguishing the elements of vested interests, contingent equitable rights, alternative or substitutional contingent remainders and other limited interests. We believe the main issue involved is one of the testator's intent. If the intent of the testator who created the interests in question can be clearly determined from his will and his directions pertaining to their disposition are valid and understandable, our concern and duty are rather to follow his mandates in such respects than to allocate the particular facts to particular legal concepts. Both respondent and the appellants agree and the statute, Section 468.620 RSMo 1949, V.A.M.S. § 474.430, requires that the construction of the will must be determined, if possible, by the true intent of the testator. In so doing, we must give to "every word, phrase and sentence some meaning if possible, and in so doing to be guided by the surrounding circumstances." Ott v. Pickard, Mo., 237 S.W.2d 109, 112.
As was said in Byrd v. Allen, 351 Mo. 99, at page 109, 171 S.W.2d 691, at page 694: "The view we take of the case obviates any necessity of a discussion of what has been written or whether a given contingent remainder is descendible, devisable, or alienable; which, according to our view, depends on the particular language employed in creating the estate and the intent of the grantor. * * * It is not for us to interpolate words in Joseph Hunter's will."
Our Supreme Court in Eckle v. Ryland, 256 Mo. 424, at page 440, 165 S.W. 1035, at page 1038 said: "* * * the rule of law is that, when the intention of the grantor in a deed or the testator in a will is ascertained, then the bounden duty of a judge is to make that intention effective, unless, it contravenes some positive rule of law."
Let us first consider briefly the assignment to ascertain what interests under the Yeater will it purports to convey. According to the pleadings the interests sought by the respondent and Jeanette Hannan are those that constitute the legal title to all the remaining property of the trust set up for Laura Yeater by the will of her father John J. Yeater. Yet the assignment on which this suit was brought and submitted recites that the assignors are selling and assigning "all the interest which we, or either of us, may now have or may hereafter acquire as heirs at law of our sister, Laura Yeater" in certain personal property described, which property, it states, "is now held by the undersigned as trustees under the will of John J. Yeater, deceased, in trust for Laura Yeater during her lifetime and at her death to be turned over to the heirs at law of John J. Yeater". (Italics supplied).
It would seem that on the face of the assignment the property it purports to assign formed no part of the interests claimed in this action. However, since the corporate stocks and bond described indicated that the property of the Laura trust estate was intended, and since the parties do not question the identity of the property referred to in the assignment, we shall treat it as undertaking to assign the contingent interests of Charles and Merritt Yeater in the Laura Yeater trust. Otherwise, the effect of the assignment depends on the meaning and intent of the will of John J. Yeater.
Turning our attention next to the will, we find that it discloses a clear intent on the part of John J. Yeater, the testator, to confine the beneficiaries of his estate to his immediate family, their children and descendants. He made no other devise or *587 bequest. He provided amply for his surviving widow, leaving the whole of his estate for her use during her entire life. At her death he gave outright to his two sons Charles and Merritt, men of business experience, one-fourth each of the remaining estate. For the benefit and protection of his two daughters, Stella and Laura, who lacked business experience, he set up for each a spendthrift trust to take effect upon the death of his widow, strictly designed to preserve the trust property for their benefit so long as they lived and made the two brothers their trustees. He provided that if he should survive his wife, then at his death, his estate should go direct to his children "as aforesaid provided". In Paragraph 7 of his will be provided that should any child of his die before his own death, then the children of such deceased child should take per stirpes the portion of the estate such deceased child would have taken if surviving, leaving the trust provisions for his daughters unchanged. His will further provided, as we have seen, that at the death of either daughter, her interest should pass to the heirs of her body when they should reach their majorities and if she left no such heirs, then "to her sister and brothers and their heirs".
The construction of the will as proposed by the respondent would defeat the intent of the testator to keep his estate within his immediate family and descendants. It would require a restriction of the words "and their heirs" which not only is not expressed, but is contradictory of their common and nontechnical meaning, and contravenes the general intent and objectives of the testator. Let us consider the words "and their heirs" as mere words of limitation, used for the sole purpose of defining the interests bequeathed at testator's death as a vested title in the remainder of Laura's trust estate in her brothers and sister, subject only to her dying without bodily heirs, as respondent contends, and not intended to name a group to take at Laura's death in the place and stead of her sister and brothers who might predecease her. The effect would be that at the death of John J. Yeater, his son Charles and his son Merritt and his daughter Stella or anyone or more of them, severally or jointly, could have, in Laura's lifetime, so alienated their respective contingent interests in Laura's trust estate, or any part thereof, as to vest at her death such interest in any person or persons to whom such conveyances may have been made, whether descendants of the testator's deceased children or perfect strangers to his issue, subject to the one and only contingency, namely, that Laura should die leaving no heirs of her body. Thus the "heirs" of a deceased sister or brother of Laura, including respondent himself and his sister Jeanette, could be excluded at Laura's death from any share in her trust estate by the prior assignment of their parents' interests to someone else, made during Laura's lifetime. It is obvious that this would be inconsistent with the testator's clear intent that his estate should vest only in his children or in their heirs. Irvine v. Ross, 339 Mo. 692, 699, 98 S.W.2d 763.
It is true that in the assignment in question, as actually made, the assignees, respondent and his sister Jeanette, happened to be surviving heirs of the body of Stella Yeater and heirs of the testator John J. Yeater, but they were not all the heirs of the testator nor all the heirs of the deceased brothers of Laura. If the assignment in 1934, to respondent and Jeanette by Charles and Merritt Yeater vested in them the entire remainder of Laura's trust estate at her death without bodily heirs, then such assignment to assignees other than the progeny of John J. Yeater or their descendants would have been equally effective.
The statute provides that in conveyances of real estate the word "heirs" or other words of inheritance are not necessary to convey an absolute or fee title, unless an intention to convey a lesser estate expressly appears or is necessarily implied. Section 442.460, RSMo 1949, V.A.M.S.; Section *588 4590, RSMo 1899. The vesting of personalty is subject to the same rules. Gardner v. Vanlandingham, 334 Mo. 1054, 1063, 69 S.W.2d 947; Deacon v. St. Louis Union Trust Co., 271 Mo. 669, 688, 197 S.W. 261, 265. In his outright bequests to each of his sons effective at his widow's death, the testator did not append the words "and his heirs". Had he intended at his death to bequeath to his other children a vested contingent interest in Laura's trust estate, alienable by them during her life, subject to no other contingency than her leaving heirs of her body, he need only to have so stated. Instead he declared that upon Laura's death, her interest should "pass to the heirs of her body * * * and should she have no such heirs, to her sister and brothers and their heirs". She left no heirs of her body and no sister or brothers, but she did leave heirs of her deceased sister and brothers, three of whom are the appellants herein.
Respondent cites numerous cases as authority for the principle that the words "and their heirs" are generally presumed to be words of limitation of title only, and that the law favors early vesting of legal titles. Eckle v. Ryland, supra; Garrett v. Damron, Mo., 110 S.W.2d 1112; Gregory v. Borders, 345 Mo. 699, 136 S.W.2d 306, 308. He also cites several authorities to support his theory that he and Jeanette received a vested alternative or substitutional contingent interest in Laura's trust estate by the assignment in evidence. He and the trial court rely greatly on the case of Tapley v. Dill, 358 Mo. 824, 217 S.W.2d 369. As was said in Eckle v. Ryland, supra, 256 Mo. at page 441, 165 S.W. at page 1039: "In a will, more than in deeds, and yet in the latter, the language used varies so materially and so much that precedents are rarely controlling in a concrete case except as they may furnish general aiding rules. Therefore the best interpretation of a will or deed is the instrument itself."
In Hereford v. The Unknown Heirs, Mo., 292 S.W.2d 289, not yet published in state reports, the court said at page 293: "The infinite variety of expressions and the differing shades of meaning so often attached to identical words or phrases when employed by the makers of wills in a context and under circumstances peculiar to the context of the will of each testator and the circumstances under which it was written make prior decisions construing similar words or phrases of far less value as precedent than those in other fields of litigated controversies. Scullin v. Mercantile-Commerce Bank & Trust Co., Mo., 234 S.W.2d 597, 602; Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23. But, fundamentally and always, the paramount rule in construing wills is the ascertainment of the intent of the testator, which is to be determined, if possible, from a consideration of the instrument as a whole."
In the Tapley case the testator gave his son outright one-half of his estate and left a life estate in another portion to each of his two grandchildren, making his son Joseph Tapley their trustee. The will provided that upon the death of either grandchild, without bodily heirs, his or her trust estate should pass to the other grandchild at whose death, without bodily heirs, the trust estate would "be and become the property of my son Joe Tapley". He did not append the words "and his heirs". Joe Tapley died before either grandchild, and by will, had devised and bequeathed his entire estate to his widow. His widow succeeded as trustee of the two trust estates until both the grandchildren died, intestate and without bodily heirs. She then claimed legal title to the trust property as sole devisee and legatee of her husband. The Supreme Court so construed the will and the intent of the testator and so construed the legal effects of the facts in the case, that it was determined that Joe Tapley, an "ascertained" remainderman, under the will, took, at his father's death, an alternative contingent remainder in the trust estates, which became a vested estate in him if living and if not living, then in his heirs or assigns. The Court pointed out that the will did not *589 specifically condition Joe's interest on his survival of the trust beneficiaries, and held that Joe had effectively devised to his widow the interest so taken, the legal title to which vested in her alone, at the death of both trust beneficiaries without bodily heirs.
We have set forth our construction of the will of John J. Yeater and found that it was his plain intention and purpose to so leave his estate that it would not bypass any of his children who survived Laura and the children of those who did not, and that the trust estates for his daughters would not, when terminated at their deaths, be dispersed and disseminated to and among persons not of his issue or descendants. As the Court pointed out in the Tapley case, Joe Tapley was a named and ascertained contingent remainderman. He constituted the only one in his group, class or relationship to the testator, and the devise to him of the contingent remainder without any words of limitation when construed with the evident intent and purpose of the will creating the interest, vested in him at the death of the testator an alternative contingent remainder in the trust estate which was alienable, and having been alienated by him to his wife by his will became a vested estate in her when both the grandchildren had died leaving no bodily heirs. Joe Tapley's heirs, legatees, devisees and assigns, and his only could have taken at his death.
In the case at bar the contingent remaindermen as to Laura's trust estate were three in number, Charles, Merritt and Stella. It was unascertained, at the date of the will or at the testator's death, which, if any of them, would survive his widow and his daughter Laura, and which would take title to the trust after its termination, or the heirs of which of them would qualify,facts which could not be determined until Laura's death. Such a situation impels the conclusion that John J. Yeater, anticipating the death of one or more of his three other children before Laura's death, intended by the use of the words "and their heirs" that such of his children as did survive Laura, along with the "heirs" of those who did not, should, at her death, become vested with the property of her trust estate if she left no bodily heirs. We believe the Tapley case is distinguishable from the case at bar in text, context and facts.
It is our conclusion that under the will and the law applicable to the issues here, the respondent and his sister Jeanette have acquired no additional interest in the trust estate of Laura Yeater by reason of the assignment made to them by Charles and Merritt Yeater in 1934, but that as the surviving heirs of Stella Yeater they are vested with one-fourth each of said trust estate per stirpes, and the appellants are each vested with one-sixth interest of said estate as surviving heirs of Charles Yeater, per stirpes. The decree is accordingly reversed and remanded with directions to enter judgment accordingly.
All concur.